GREENPOINT NATIONAL BANK OF BROOKLYN, Respondent,
*v.* CHARLES L. GILBERT, Appellant.

Trial — bills, notes and checks — duress — waiver of alleged duress — motion for direction of verdict in action on promissory note — submission of question of consideration to jury — where there is sharp conflict in evidence court may not set aside verdict for defendant and direct verdict in favor of plaintiff.

1. Duress in the execution of a promissory note is waived by renewals and payments thereon extending over several years.

2. Where a motion is made for the direction of a verdict, in an action upon a promissory note, the court has a right, pending its decision on such motion, to submit the question as to consideration to the jury (Civ. Pr. Act, § 459), and when the jury renders its verdict the court may set the same aside on the ground that it is against the weight of evidence and grant a new trial, but where there is a sharp conflict in the evidence as to consideration the court may not direct a verdict in favor of the plaintiff for the amount claimed.

*Greenpoint Nat. Bank* v. *Gilbert*, 204 App. Div. 889, reversed. ·

(Argued October 16, 1923; decided November 20, 1923.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial department, entered December 19, 1922, unanimously affirming a judgment in favor of plaintiff entered upon a verdict directed by the court.

*William Godnick, Louis R. Bick* and *Fred Francis Weiss* for appellant. The trial court erred in setting aside the verdict and directing a verdict for the plaintiff. (*Dallin* v. *Mayer*, 107 N. Y. Supp. 316; *Hogan* v. *Carroll*, 7 N. Y. Supp. 183; *Grinner* v. *Mandell*, 140 N. Y. Supp. 391; *Rosenkrantz* v. *Saberski*, 40 Misc. Rep. 650; *Phillips* v. *Phillips*, 78 N. Y. Supp. 1000; *Von Der Born* v. *Shultz*, 104 App. Div. 94; *Lacs* v. *Everard Breweries*, 107 App. Div. 250; *Foreman* v. *N. Y. C. Rys. Co.*, 54 Misc. Rep.

557; *Bail* v. *N. Y., N. H. & H. R. R. Co.*, 201 N. Y. 355; *McDonald* v. *Met. St. Ry. Co.*, 167 N. Y. 66.)

*Herman S. Bachrach, Clarence C. Bachrach* and *Julius Siegelman* for respondent. The defense of lack of consideration presented no question for the jury. (*Dovale* v. *Ackermann*, 2 App. Div. 404; *Wehrum* v. *Kuhn*, 61 N. Y. 623; *White* v. *Hoyt*, 73 N. Y. 505; *Feeter* v. *Weber*, 78 N. Y. 334; *Andrews* v. *Brewster*, 124 N. Y. 433; *Sarasohn* v. *Kamaiky*, 193 N. Y. 203; *Worth* v. *Case*, 42 N. Y. 362; *Johnson* v. *Titus*, 2 Hill, 606; *Childs* v. *Barnum*, 11 Barb. 14.)

McLAUGHLIN, J. In September, 1913, the Gilbert Metals Selling Company, a domestic corporation, had an account with the plaintiff, a national bank. Defendant was a director of the bank and a member of its finance committee. His brother Joseph M. Gilbert was president of the selling company. On a certain day during the month named, Joseph, as president of the corporation, deposited to its credit in the bank, certain checks drawn on out-of-town banks. Whether these checks were drawn by itself or its customers does not clearly appear. About the time these checks were deposited the selling company drew its own checks on its account with the plaintiff, which were paid. A little later it was discovered that the checks deposited by the selling company were worthless, with the result that the company had an overdraft in the bank for something like $3,800: When this discovery was made, the defendant, with various other officers of the bank, including its attorney, interviewed the president of the selling company, and, according to the testimony of defendant, unless this overdraft were at once made good, the bank, acting through its attorney, threatened to institute criminal proceedings against defendant's brother; that if·such proceedings were instituted the same might result

in disgracing Joseph and his family, and the suggestion was made that to prevent such proceedings, defendant himself assume the payment of $1,800 of the overdraft and the bank would take care of the balance, if Joseph would convey to it certain land mentioned, and also assign a claim which he or the selling company had against a third party; that defendant, believing the threats would be carried out, that his brother would be imprisoned and his family disgraced, gave his promissory note to the bank for $1,800, and the bank took a deed from Joseph of the land in question and an assignment of the claim referred to; that the note was made payable four months after date; that at the expiration of that time the bank officers said to him — inasmuch as a federal examiner was about to examine the bank and might discover the transaction — defendant, instead of renewing the note for $1,800 should give a note for $3,800, the whole amount of the deficiency; that he would not have to pay more than the $1,800 represented by the original four months' note; that relying upon these statements, he gave a note for $3,800, without consideration; that thereafter every three months this note was renewed — he paying $100 on the principal at the time of such renewal; that such payments were made and renewals given until the note was reduced to $2,000; that at the time the note had been reduced to this sum the officers of the bank had changed; that defendant was then a borrower of the bank, apart from this particular transaction, in something like $25,000; that when he was asked to renew the note which had been reduced to $2,000, he told the officers of the bank he had done all he was required to do, and he would not further renew the note or pay anything more upon it; that he was then told by the president of the bank that it did not recognize the agreement made by the prior officers, and unless he renewed the note it would call his loans and require him to resign as a director;

that upon such threat being made, he continued renewals and payments until January 20, 1921, when the note in suit was given for $1,500; that when this note became due he had succeeded in paying off all his other indebtedness to the bank; that he thereupon resigned as a director and refused to renew the note or make any further payments upon it, and this action was brought to recover thereon. He set up as a defense duress and want of consideration.

The evidence on the part of the bank tended to show that when defendant's brother Joseph's overdraft was discovered, defendant assumed and agreed to pay its entire amount, $3,800, and as a consideration for the promise the bank obtained from the brother a deed of the land and an assignment of the claim to which reference has been made, and transferred them to the defendant; that it also transferred to him a judgment for upwards of $3,800, which had been obtained on its behalf against the brother and the selling company.

Defendant denied that he accepted such deeds or assignments or that he had ever received any consideration for the note.

At the conclusion of the evidence plaintiff's counsel moved for the direction of a verdict in favor of the plaintiff. The trial court held, and I think correctly, that the alleged defense of duress was waived by the renewals and payments on the notes extending over several years, but that pending the motion for the direction of a verdict he would send the case to the jury to pass upon the question of whether there were any consideration for the note. No objection was made to his reserving decision on this motion until the jury had passed upon the question of consideration. The case was thereupon submitted to the jury to pass on that question. They found a verdict for the defendant. When the verdict was rendered plaintiff's counsel asked to have it set aside on various grounds, and among others, that

1923.]　　Opinion, per McLAUGHLIN, J.　　[237 N. Y. 19]

it was against the weight of evidence, to which the court responded: "I think so, counselor, I think it should be a verdict for the plaintiff," but he gave counsel a few days in which to file a memorandum. Thereafter he set aside the verdict and directed a verdict in favor of the plaintiff for the full amount claimed. To this direction an exception was duly taken.

When the motion was made for the direction of a verdict the court had a right, pending its decision on such motion, to submit the question as to consideration to the jury. Section 459 of the Civil Practice Act expressly provides that when a motion is made to nonsuit the plaintiff, or for the direction of a verdict, the court, pending the decision of such motion, may submit any question raised by the pleadings to the jury, or require the jury to assess the damages; that after the jury has rendered a special verdict upon such submission, or assessed the damages, the court may then pass upon the motion to nonsuit or direct such general verdict as either party may be entitled to.

I am of the opinion the court erred in directing a verdict for the plaintiff. There was a sharp conflict as to whether there was a consideration for the note. A question of fact was thus presented which was for the jury to pass upon. Defendant denied he had ever received the assignment of the claim, the judgment, a conveyance of the land, or any consideration. He testified that he never saw the assignment of the judgment or the claim and that when a deed of the land was sent to him, he immediately returned it. When the jury had rendered its verdict the court could have set the same aside on the ground that it was against the weight of evidence, in which case there would have been a new trial, but he could not, in view of the conflict, direct a verdict as he did.

This conclusion renders it unnecessary to pass upon the question of whether or not section 457a of the Civil

Practice Act be unconstitutional. The verdict was not directed under that section. No reference was made to it and it is obvious from what the court did in reserving its decision on the motion to direct a verdict until the jury had passed upon the question of fact submitted to it, that it acted under section 459 and not 457a.

The judgments appealed from should be reversed and a new trial ordered, with costs to abide event.

HISCOCK, Ch. J., HOGAN, POUND and ANDREWS, JJ., concur; CARDOZO, J., concurs in result; CRANE, J., dissents.

Judgments reversed, etc.