EDWARD H. GARCIN, Plaintiff, v. GRANVILLE IRON CORPORATION, INC., and Others, Defendants.

Supreme Court, New York County, July 9, 1930.

*Nichols & Snevily* [*Leonard Belford* of counsel], for the plaintiff.

*David V. Cahill*, for the defendants Granville Iron Corporation, Inc., and Matthew B. Bloomer.

*Duncan, Klupt & Bruchhausen*, for the defendant Daniel F. Lewis.

UNTERMYER, J. The action is upon a note for $25,000 executed by the defendant corporation and indorsed by the defendants Bloomer and Lewis. Each of the answers asserts, as a defense, a failure of consideration, alleging that the sum loaned upon the note was in part performance of a parol agreement, which the plaintiff has failed to perform, to finance generally the defendant corporation. The same allegations, somewhat amplified, are stated by way of counterclaim. It is alleged by the defendant corporation, in terms which in substance are repeated in the answers of the

individual defendants, that "the note set forth in the complaint herein and other valuable considerations were given to the plaintiff in consideration of the plaintiff's promise to finance the business and operations of the defendant Granville Iron Corporation, Inc., by advancing for its use, benefit and credit large sums of money as might be required for such purpose in addition to the amount of the said note."

The note here in suit was given pursuant to a written contract executed November 4, 1925, between the plaintiff and the defendant corporation for the financing of the defendant corporation by the purchase not only of that note but of two other notes — one for $2,500 and another for $25,000 — neither of which, however, is involved here. The funds thus to be supplied were agreed to be used by the defendant corporation for the liquidation of its floating indebtedness and for the construction and equipment of a railroad spur. The contract of November 4, 1925, contains, on its face, every element necessary to create a valid contract. It suggests neither defect nor omission. It specifies the exact total amount of notes, aggregating $52,500, which shall be purchased by the plaintiff from the corporation, the date when each note shall mature, the corporate purposes for which the proceeds of the notes shall be used and the security to be given t the plaintiff for the loan. It also provides that the plaintiff shall receive outright certain shares of stock of the corporation in consideration for the loan. It contains provisions for anticipating payment by the defendant corporation of one of the notes and the release thereupon of a pro rata amount of the security. These provisions, without reference to others, are sufficient to indicate how minute and specific was the written contract whereby the plaintiff acquired the note here in connection with the financing of the defendant corporation. That contract contains nothing to suggest that the parties intended to express a part only of their agreement in writing and to permit the residue to rest in parol. Upon its face it purports to have exhausted the intentions of the parties.

It is now contended that this written contract was not complete; that there was a previous oral understanding that the plaintiff would finance the defendant corporation not merely to the extent of the three notes specified in the written contract but for such further "large sums of money as might be required" and that it was a part of the understanding pursuant to which the note in suit was given "that the plaintiff in consideration of the giving of the note to his order which is set forth in the complaint herein and for other valuable considerations agreed with the defendants to finance the business and operations of the defendant Granville

Iron Corporation, Inc." Since it is conceded that the note in suit was given pursuant to the contract of November 4, 1925, it must be the contention of the defendants that that contract does not express all the obligations assumed by the plaintiff in connection with the transaction which resulted in the execution of the note. The written contract requires him to finance the corporation by the purchase of only $52,500 of its notes; the defendants insist that by parol the plaintiff agreed to finance the corporation for such further amount " as might be required." The contract of November 4, 1925, requires the plaintiff to finance the corporation to the extent therein specified only; the defendants assert that that limitation was nullified by a contemporaneous parol agreement to finance the corporation far beyond the stipulations of the written contract. Since the parol contract appears to be inconsistent with the written instrument, it may well be doubted whether the defendants could establish the alleged parol agreement on which they rely. (*Thomas* v. *Scutt*, 127 N. Y. 133; *Edison El. Ill. Co.* v. *Thacher*, 229 id. 172; *Loomis* v. *N. Y. C. & H. R. R. R. Co.*, 203 id. 359.) Even if we regard the alleged contemporaneous parol contract to finance the corporation generally as consistent with the written contract, complete upon its face in all respects, by which the plaintiff undertook to finance the corporation for a limited amount, the parol contract would seem to be so closely related to the subject dealt with in the written contract as to have been merged therein by operation of law. (*Mitchill* v. *Lath*, 247 N. Y. 377; *Eighmie* v. *Taylor*, 98 id. 288; *Wilson* v. *Deen*, 74 id. 531; *Lafayette Trust Co.* v. *Richards*, 81 Misc. 338.)

Assuming, however, the existence of the parol agreement as it is alleged in the answers and in the bill of particulars, it appears to be so vague and uncertain in its terms as to be unenforcible. (*Royal Bank of Canada* v. *Williams*, 220 App. Div. 603.) The agreement does not specify the nature of the advances to be made nor the terms. Was the plaintiff to make loans upon notes of the corporation or was he to purchase shares of stock? If it was intended that the financing should assume the form of loans or the purchase of notes, at what discount were the notes to be taken? When were the loans to be made? What rate of interest should they bear? When would they mature and what security was to be given? If the financing was to consist of the purchase of stock, what was to be the class of stock and what were to be its preferences? At what price was it to be purchased? Contracts more definite than this have been held to be void for lack of certainty. (*Flaherty* v. *Cary*, 62 App. Div. 116; affd., 174 N. Y. 550; *Petze* v. *Morse Dry Dock & Repair Co.*, 125 App. Div. 267; affd., 195 N. Y.

584.) Finally, the amount of the financing was not agreed upon, except that it is stated in the bill of particulars that it should not be less than $100,000. The maximum, however, is left altogether subject to conjecture, for the amount of the financing would necessarily depend upon the operations of the corporation, the extent of which is not defined. A somewhat analogous situation was presented in *United Press* v. *N. Y. Press Co.* (164 N. Y. 406) where the maximum but not the minimum was specified. It is impossible, therefore, to say that the minds of the parties met upon the terms of any contract, or that a meeting of their minds would ever have occurred if they had undertaken to reduce to certainty the essential questions upon which they had not agreed.

It is not necessary, however, to rest the decision of this motion upon either of the grounds so far considered because, in my opinion, it is manifest from the undisputed facts and the correspondence here that the defense and counterclaim are sham and frivolous and are interposed solely to procure a delay of judgment.

The alleged verbal agreement is not only inconsistent with the written contract of November 4, 1925, but is inconsistent with the correspondence which preceded and followed it. The basis upon which the plaintiff undertook to become interested in the affairs of the Granville Iron Corporation, Inc., was set forth in a letter to the defendant Bloomer and to the corporation of October 9, 1925. In that letter the plaintiff distinctly disclaimed any engagement generally to finance the corporation, but merely stated: " I would undertake to assist the sale of said stocks and while I could not guarantee to do it I believe I would be able to carry it to a successful issue." In reply the defendant Bloomer, accepting the proposal, likewise recognized that there was no agreement to finance the corporation beyond the sum specified. Expressing a desire that the plaintiff should examine the property of the corporation he said: " I am willing to wager that if this is done you would want to become interested to a much larger extent than we have thus far discussed." If any doubt could remain concerning the arrangement of the parties it is dispelled by the letter written to the plaintiff by the defendant Lewis, as treasurer of the Granville Iron Corporation, Inc., five days after the contract of November 4, 1925. In that letter he says: " Will get busy on a ' prospectus ' suitable to submit to parties who may become subscribers to our preferred stock. Mr. Bloomer and I both trust subscriptions can soon be completed to cover the sale of all the preferred stock, so that not only every dispatch may be secured in order to liquidate your loans but to also complete the mine equipment, furnish the Corporation with cash, working capital and also repay Mr. Bloomer." It is

impossible to explain these statements made before and immediately after the transaction here, except upon the theory that there was no contract with the plaintiff to finance generally the affairs of the corporation and that the defendants had plans then under consideration to secure otherwise the funds which it is now claimed the plaintiff agreed to supply.

The papers submitted in support of the motion convincingly establish by documentary proof that the defendants repeatedly admitted their liability on the note sued upon and failed to assert any rights under the alleged contract on which the counterclaim is based until after this action was commenced. The moving papers include copies of letters passing between the parties from October 9, 1925, to March 28, 1929, containing continuous admissions by the defendants of their liability on the note, requests for renewals and proposals for refinancing the indebtedness. The correspondence is devoid of even remote reference to the contract alleged in the answers. Of especial significance is the fact that the minutes of a special meeting of the board of directors of the corporate defendant, dated January 25, 1929, and noting the attendance of the defendants Bloomer and Lewis, recognize the plaintiff's claim and provide for its payment.

The defendant Bloomer is the only defendant who has submitted an affidavit in opposition to this motion. His affidavit merely relies upon the allegations of the parol contract " as alleged in the answer and set forth with some detail in the bill of particulars " without setting forth any facts to support the conclusion that a *bona fide* counterclaim exists. By that affidavit he states, however, that " no demands for the carrying out of the plaintiff's obligations to finance the corporation in accordance with his agreement have been made for several years. It was understood by me from plaintiff's own statements that it would be perfectly futile to make any such demands. Under these circumstances the note now sued upon was renewed several times, and on each renewal, at plaintiff's request, additional stock of the company was given him as collateral security." He further alleges that he personally made the interest payments on the note until a few months ago. It might plausibly be contended that the conduct of these defendants in executing renewal notes, with knowledge that there was a breach of contract amounting to a failure of consideration for the note, estops them from asserting such matter as a defense in an action on the renewal note. (*Conran Co., Inc.,* v. *Brevort Developing Corp.,* 137 Misc. 265; *Stewart* v. *Simon,* 111 Ark. 358; 163 S. W. 1135; 8 C. J. 444, § 658; 1 Daniel Neg. Inst. [6th ed.] § 205, and cases cited.) The Court of Appeals has intimated that even the

defense of duress may thus be waived by renewals and payments extending over several years. (*Greenpoint Nat. Bank* v. *Gilbert*, 237 N. Y. 19, 22.)

Without considering the application of this doctrine to the defendants' counterclaim, I am convinced that there is no real issue of fact to be tried — "the issue is not genuine but feigned." (*Curry* v. *Mackenzie*, 239 N. Y. 267.) The conduct and admissions of the defendants are so utterly repugnant to the existence of the alleged parol contract as to lead to the conviction that the defense is an afterthought. Under such circumstances, I am of the opinion that this is one of those unusual cases where the motion to strike out the answers and for summary judgment must be granted. (*McAnsh* v. *Blauner*, 222 App. Div. 381; *Smith* v. *Cranleigh, Inc.*, 224 id. 376; *Evelenko* v. *Catts*, 125 Misc. 726; affd., 215 App. Div. 805; affd., 243 N. Y. 613.) Order signed.