UNITED STATES FIDELITY AND GUARANTY COMPANY and Others, Plaintiffs, *v.* WORCESTER SALT COMPANY, Defendant.

Supreme Court, New York County, November 10, 1933.

*Vincent A. O'Connor* [*Vincent A. O'Connor* of counsel], for the plaintiff.

*Mandeville, Waxman, Buck, Tetter & Harpending* [*Henry A. Uterhart* of counsel], for the defendant.

COTILLO, J. The defendant has brought on for reargument a motion to sever causes of action on the ground of misjoinder of parties plaintiff and for the misjoinder of causes of action.

The action was instituted by five plaintiffs who hold certain common stock certificates of the defendant as innocent purchasers for value to compel the defendant to transfer the same to plaintiffs and issue new stock certificates therefor in their names, and, if new stock cannot be issued, to pay to the plaintiffs the value at the time they were acquired.

The gravamen of the action is that for a number of years the defendant permitted its comptroller to act solely and exclusively as its stock transfer agent in connection with the transfer and issuance of stock without any supervision or surveillance whatever by the board of directors and in addition to that had sole and exclusive power to act for the corporation in connection with any inquiries made of it by stockbrokers or other parties relating to the purchase or sale of such stock, its market price, etc. The comptroller practically dominated all of the affairs of the defendant at its New York office where all of its stock was issued and transferred during the years 1927 to 1933 here involved and for many years prior to that time. His authority and control were emphasized by the fact that the president of the corporation was

ill and away from the office for continued and long periods of time, during which absence the said comptroller had practically exclusive control, and the president acted with scant supervision when he attended the office and generally sanctioned the conduct of the defendant's affairs as being administered by said comptroller. In brief, the comptroller, a trusted employee for many years and an apparently honest and substantial man, occupied a most extraordinary position, relation and agency to the administrative conduct of defendant's entire business.

The comptroller during the years 1927–1933, being defendant's sole and exclusive transfer agent, caused to be transferred and issued all of defendant's stock certificates that were transferred and issued during that time. There is no question that a great number of the stock certificates so transferred or issued are valid stock certificates of the defendant corporation including many shares and certificates of stock in the name of the comptroller as well as other parties, for he was considered to be a very wealthy man by defendant, his business acquaintances and neighbors in his community where he was a director of the Queens County Trust Company. After all these years and in May, 1933, the defendant claimed that a large number of the stock certificates so issued were spurious.

These certificates issued and held in the names of various parties including those the comptroller had in May, 1933, had a market value of upwards of $1,000,000 and approximately $500,000 had been loaned by various banks and stock exchange houses and individuals to the respective parties then holding the same. These loans aggregating $500,000 were made by not less than four banks and six different stock exchange houses and the certificates were transferred among various other stock exchange houses. In May, 1933, when defendant claimed that these stock certificates were spurious, the plaintiffs, or in the case of the bonding insurance company plaintiffs, their subrogors to whom they paid claims under the respective policies, were innocent holders of these stock certificates for valuable consideration. This action is now brought to compel the transfer of this stock by the defendant and the issuance of new stock in the names of the respective plaintiffs or, in the alternative, if this cannot be done for damages.

The five plaintiffs are the United States Fidelity and Guaranty Company, a Maryland corporation with a place of business at 75 William street, New York city; the Ætna Casualty and Surety Company, a Connecticut corporation with a place of business at 100 William street; the American Surety Company, a New York

corporation with offices at 100 William street, New York city, and the Indemnity Insurance Company of North America, a Pennsylvania corporation with offices at 111 John street, New York city. The plaintiff Blake Bros. & Co. is a partnership with its office and principal place of business at 40 Wall street, New York city. The first point urged by the defendant is that there is a fatal defect in the joinder of causes of action because different places of trial will be required. This contention is based upon the fact that three of the plaintiffs are foreign corporations. This contention, however, has application only in cases in which the foreign corporation has no place of business in the county in which the action is brought. (*Philadelphia National Bank* v. *McAllister,* 234 App. Div. 883.)

The defendant further contends that the plaintiffs have been improperly joined under section 209 of the Civil Practice Act. This section provides for the joinder of plaintiffs generally and reads as follows: " All persons may be joined in one action as plaintiffs, in whom any right to relief in respect of or arising out of the same transaction or series of transactions is alleged to exist whether jointly, severally or in the alternative, where if such persons brought separate actions any common question of law or fact would arise; provided that if upon the application of any party it shall appear that such joinder may embarrass or delay the trial of the action, the court may order separate trials or make such other order as may be expedient, and judgment may be given for such one or more of the plaintiffs as may be found to be entitled to relief, for the relief to which he or they may be entitled."

The purpose of section 209 of the Civil Practice Act is to permit plaintiffs having claims involving common questions of law or fact to join in one complaint (*Spetler* v. *Jogel Realty Co.,* 224 App. Div. 612) and for dispensing with duplication of trials and proof. (*Kelso* v. *Cavanagh,* 137 Misc. 652.) The causes of action are all based on the same rules of law and the same questions of fact are involved.

The complaint alleges in substance, and in the following order, that the plaintiffs are four corporations, one domestic and three foreign, and certain individuals comprising a copartnership, all with offices and places of business in the borough of Manhattan, city of New York. The principal office and place of business of the domestic corporation plaintiff is the county of New York as shown in its certificate of incorporation filed with the Secretary of State of the State of New York. Edward S. Blagden, one of the individual plaintiffs and a copartner of Blake Bros. & Co., was at the time of the commencement of this action and continues

to be a resident of New York county. The defendant is a domestic corporation with an office and place of business in the borough of Manhattan, county, city and State of New York, and it was in that office that the events giving rise to this cause of action occurred although its designated main office is in Wyoming county, N. Y. Defendant's capital stock consists of 20,000 shares of common stock and 10,000 shares of preferred stock of the par value of $100 each.

The complaint alleges the manner in which defendant's stock was issued and transferred for a period of more than six years, including 1927 to 1933. It alleges that one Thomas F. Curran, whose designated capacity was defendant's comptroller, was the sole and exclusive transfer agent of the defendant and in complete control and dominance of this phase of defendant's activity, and that he exercised an unusual, extraordinary, unique and exclusive agency and control of all matters relating to its stock, including communications and transactions with bankers and other third parties relating to the purchase or sale of its stock. He was defendant's peculiar agent to maintain the market value of the stock and made or arranged purchases of the stock for the account of third parties or for his own account or that of defendant and its issuance to defendant's employees and their subsequent surrender thereof, all without consideration, and the arranging for the employees to negotiate personal promissory notes for the alleged purpose of obtaining loans to be used in pursuance of defendant's plan to support the market value of the stock and otherwise dominated and controlled all matters relating to defendant's stock and also a great many other phases of its administrative activity, being in practically complete charge of its New York city office and especially during the long and intermittent absence of the president of the company due to his illness and with scant, if any, supervision or surveillance whatever.

The complaint alleges also the facts and circumstances by which the respective plaintiffs each acquired the shares of stock. The concluding paragraph of the allegations relating to each of the plaintiffs specifies the number of shares of stock held by that plaintiff and alleges that it is entitled to the transfer thereof and the issuance of new stock in its name in place thereof or in the event that same cannot be transferred, for damages, and this before the facts relating to the acquiring of the stock by the next succeeding plaintiff are alleged. In conclusion of the complaint, the prayer for relief comprises a summary of the requests for relief by the respective plaintiffs to the extent thereinbefore specified as to each one of them.

This action falls within the decision of *Akely* v. *Kinnicutt* (238 N. Y. 466). HISCOCK, Ch. J., writing the opinion of the court, stated the law as follows (at p. 472): " We shall consider first the question certified and earnestly argued by counsel whether the causes of action which have been joined in this complaint do involve such a common question of law or fact as justifies the court in permitting them to be united in one complaint. It is necessarily admitted by the defendants that they do involve some common questions of law and fact but it is insisted that these common questions when compared with all of the questions which must be determined in each case are not of such comparative weight or importance as to justify the union which is being attempted. We are not able to agree with this view. We do not need to hold that the presence in each cause of action of some common but inconsequential or theoretical issue would be a sufficient reason for assembling in one complaint nearly two hundred causes of action. We shall assume in this case that such common questions must be of substantial importance as compared with all of the issues and that the question of the comparative weight and importance of common and separate issues involved in each cause of action is quite largely a matter of judgment. But even on that theory we do not think that it can be said by us as matter of law in this case that there are not present in each cause of action common issues which amply satisfy the test of the statute. The common issues are basic and would seem to be the ones around which must revolve the greatest struggle and to which must be directed the greatest amount of evidence. These are in the ones in substance whether the defendants conspired to organize a corporation and float its stock at much more than its real value and whether in pursuance of this conspiracy they fraudulently issued a prospectus showing the stock to be much more valuable that it really was, and whether they did this with the deliberate intent to cheat and defraud the public into buying the stock at an unconscionable value. These questions are common to every cause of action. The separate issues which must be tried in each instance will be in the main whether the plaintiff saw the prospectus or learned of its representations, was influenced thereby and at a certain date bought a certain amount of stock at a certain price in advance of its real value in reliance thereon. While these latter may equal in number the common ones it seems from the face of the complaint, by which we must decide the question, that the majority of them cannot involve much evidence or lengthy dispute, but that the trial of them will yield in contentious importance and difficulty to the questions which have been first suggested and that, therefore, this is a case which

comes well within the meaning of the statute so far as relates to common questions.

" Then it is urged by appellants that there is lacking that feature, essential to the collection in one complaint of all of these causes of action, that they should be ' in respect of or arising out of the same transaction or series of transactions.' We do not find any basis for this claim. Each cause of action is based upon a purchase of stock at a fictitious value in reliance upon representations, as alleged, of defendants in respect of the value of that stock which were untrue and fraudulent and made for the purpose of inducing the public including plaintiff to make such purchases. The transaction in respect of or out of which the cause of action arises is the purchase by plaintiff of his stock under such circumstances, and such purchases conducted by one plaintiff after another respectively plainly constitute a series of transactions within the meaning of the statute. The purchase by a plaintiff of his stock is not robbed of its character as a ' transaction ' because, as appellants seem to suggest, the transaction was not a dual one occurring between the plaintiff and the defendants, and the many purchases by plaintiffs respectively do not lose their character as a series of transactions because they occurred at different places and times extending through many months."

The motion for reargument is granted and on the reargument the motion for an order directing the severance of the various plaintiffs' causes of action and that each plaintiff be required to serve a separate amended complaint stating its individual cause of action and entitled in the proper venue, is denied, with ten dollars costs.