Harry S. DIFFENDERFER, Plaintiff,

v.

HEUBLEIN, INC., a corporation, and Ralph A. Hart, Defendants.

No. 3-67-Civ-73.

United States District Court
D. Minnesota,
Third Division.

May 23, 1968.

Richard J. Leonard, St. Paul, Minn., for plaintiff.

Lawrence J. Hayes, St. Paul, Minn., for defendants.

MEMORANDUM, FINDINGS AND OR-
DER GRANTING MOTIONS FOR
JUDGMENT N.O.V. & NEW
TRIAL

DEVITT, Chief Judge.

In this breach of contract action, the defendants move for judgment n. o. v.

or, in the alternative, for a new trial, following the return of a special verdict for the plaintiff in the amount of $161,-500.

The facts center around plaintiff's employment, during 1966 and 1967, as a Sales Manager for Theo. Hamm Brewing Company of St. Paul, a wholly-owned subsidiary of Heublein, Inc., a Connecticut-based company.

Plaintiff signed a written contract dated March 7, 1966, with Theo. Hamm Brewing Company to serve as Vice President of Sales for Hamm's at $35,000 a year, with a proviso permitting Hamm's to terminate the agreement upon 30 days' notice. In such event, Hamm's was obligated to pay plaintiff $25,000 severance pay. Hamm's found plaintiff's services to be unsatisfactory, discharged him on February 15, 1967, and paid him $25,000 severance pay.

Plaintiff claimed that his employment was with Heublein, the parent company, not with Hamm's, and that an employment contract was made with Heublein through Ralph A. Hart, Chairman of the Board of Heublein (and simultaneously President of Hamm's) in oral and written communications in March, 1966, principally in the New York City area. He claimed that the contract with Heublein was wrongfully breached by his discharge on February 16, 1967, and that he had been damaged, principally by being deprived of the profits he would have enjoyed through the benefits of promised Heublein stock options. The market value of Heublein stock rose markedly between March, 1966 and the time of trial.

The case went to the jury on the respective claims of the parties and the jury, through its response to the special verdict questions, found in substance that plaintiff's contract was with Heublein for a two-year period and included a stock option for 5,000 shares of Heublein stock; that Heublein discharged plaintiff without cause; that plaintiff signed the Hamm's contract under du-

ress; and that plaintiff suffered damages totalling $161,500, $150,000 of which was on account of loss of stock options. The special verdict form with answers of the jury is set out in the footnote below.[1]

In this post-trial motion for judgment n. o. v. or a new trial, defendants' principal urging is that the court make findings of fact under Rule 49 of the F.R. Civ.P. on two issues not submitted to the jury and direct the entry of a judgment for defendants on the basis of such findings. Defendants argue that (1) plaintiff's acceptance of the benefits under the Hamm's contract constituted a waiver of the duress which the jury found the defendants exercised upon him and a ratification of the Hamm's contract, and (2) the contract allegedly made by the plaintiff with Heublein is void because of the statute of frauds.

■ The issues of waiver and ratification and statute of frauds were not submitted to the jury in the special verdict form and under Rule 49 the Court is authorized to make findings on those issues.

■ I am fully satisfied that the verdict of the jury in this case was a mistake, and that the great preponderance of the evidence supports a contrary verdict. I am especially impressed that the facts at trial clearly support a finding that plaintiff's conduct after the signing of the Hamm contract in April, 1966, constituted a waiver of duress if any there was, a ratification of the Hamm contract, and hence an abandonment of the contract, if any there was, with Heublein.

Thus the following facts are clearly established and found by the court:

1. On March 14, 1966, plaintiff signed the following documents indicating

1. "We, the Jury, find answers to the special verdict questions as follows: 1. Did Mr. Diffenderfer and Mr. Hart, in their discussions, telephone calls, and telegrams between March 6 and March 8 make a contract of employment—

"(a) Between Diffenderfer and Heublein? /s/ YES

or

"(b) Between Diffenderfer and Hamms? _____

"If you find an employment contract was made between Diffenderfer and Heublein, then answer these questions—

"2. Was the contract for a definite term of time? /s/ YES

If so, for what term of time? /s/ 2 years

"3. Did the contract include an option to Mr. Diffenderfer for stock options on Heublein stock? /s/ YES

"(a) If so, for how many shares? /s/ 5000

"(b) If so, what was the earliest date at which the options could be exercised? /s/ MARCH 7, 1968

"(c) If so, must the plaintiff have been in the employ of Heublein on the date found in (b) above in order to qualify to purchase such stock? /s/ YES

"4. Did Heublein have a good-faith dissatisfaction with Mr. Diffenderfer's employment? /s/ NO

"5. Did Heublein have good cause for terminating Mr. Diffenderfer's services? /s/ NO

"6. When plaintiff executed the written employment contract with Theo. Hamm Brewing Co. on or about April 13, 1966, and at the same time executed a stock option agreement with Heublein, Inc., did he sign those instruments of his own free will, and without duress? /s/ NO

"7. What damages did Mr. Diffenderfer suffer in dollars on account of loss of stock options? $ /s/ $150,000.00

Other damages? $ /s/ 11,500.00

Total damages $ /s/ 161,500.00

"Dated this /s/ 16 day of January, 1968.

/s/ ROBERT DUEDE"
Jury Foreman

that his employer was Theo. Hamm Brewing Co. (and not Heublein, Inc.).

a. Designation of beneficiary, Hamm's profit sharing plan. (Def. Ex. F)

b. Application for Hamm's insurance coverage with Life Insurance Company of North America (Def. Ex. G)

c. Hamm's enrollment card for Minnesota Mutual Life Insurance Coverage. (Def. Ex. H)

d. Payroll deduction authority for Hamm's accidental death and injury policy. (Def. Ex. I)

e. Application for fidelity bond coverage. (Def. Ex. K)

f. Questionnaire under the penalties of perjury for the U. S. Treasury Alcohol Tax Unit. (Def. Ex. L)

2. Commencing in March, 1966 plaintiff received salary and expense checks exclusively from Theo. Hamm Brewing Co. (Def. Ex. M, N, O, P) On or about April 13, 1966, plaintiff signed an employment contract with Hamm's effective as of March 7, 1966 (Def. Ex. R) providing essentially that:

a. Hamm's was the employer,

b. Plaintiff was to be Vice-President, Sales, for Hamm's,

c. Salary would be $35,000.00 per annum plus such fringe benefits as were being offered to Hamm's employees,

d. Hamm's would use its best efforts to secure plaintiff an option to 5,000 shares of Heublein, Inc. at a price equal to Fair Market Value on date of grant exercisable as follows:

1,666 shares at the commencement of the third year of employment,

1,666 shares at the commencement of the fourth year of employment,

1,668 shares at the commencement of the fifth year of employment.

e. Hamm's could terminate plaintiff prior to March 6, 1968, without cause on 30 days' notice plus $25,000.00 severance pay.

3. On or about April 13, 1966, plaintiff signed a stock option agreement with Heublein, Inc. dated April 7, 1966, providing for exercise of options to 5,000 shares in stages as hereinabove indicated commencing April 6, 1968. (Def. Ex. S)

4. Plaintiff returned the contracts signed by him to Paul R. Dohl, general counsel for Heublein, Inc., with a covering letter dated April 13, 1966 and providing:

"Dear Mr. Dohl:

"This will acknowledge receipt of the Employment and Stock Option contracts you forwarded to me April 7, 1966.

"As you requested, attached is the signed copy of these agreements. Sincerely, H. S. Diffenderfer III."

5. In June of 1966, plaintiff requested from Ralph A. Hart a loan of $20,415.00 to finance his house purchase with repayment to come out of sale proceeds of plaintiff's house in Pittsburgh, and from monies to be received from H. J. Heinz Co. (Tr. 164) Said loan was to be repaid "within less than one year." (Def. Ex. X)

6. On June 23, 1966, plaintiff signed a demand note to Theo. Hamm Brewing Co. in the amount of $20,415.00—said sum to be repayable on demand and without interest. (Def. Ex. Y)

7. On June 22, 1966, plaintiff filed an application for membership with the North Oaks Golf Club showing Theo. Hamm Brewing Co. as his employer. (Def. Ex. Z-1) (Tr. 168)

8. Mr. Roy Westly became Executive Vice-President of Theo. Hamm Brewing Co. in July, 1966 (Tr. 93, 178, 225) and thereafter plaintiff reported directly to him. (Tr. 85)

9. When plaintiff was terminated on January 16, 1967, the termination letter came from Theo. Hamm Brewing Co. (Def. Ex. Z-4)

10. Thereafter plaintiff accepted $25,000.00 in severance pay from Theo. Hamm Brewing Co. (Tr. 224) (Def. Ex. Z–5, Z–6)

11. When plaintiff wrote to Hamm's on February 23, 1967, he made no mention of any claim against Heublein, Inc. (Def. Ex. Z–7)

12. After termination of his employment plaintiff applied for unemployment compensation as an employee of Theo. Hamm Brewing Co. (Def. Ex. Z–9) (Tr. 222)

13. After April 13, 1966 and until February 15, 1967, plaintiff continued to receive pay checks and expenses from Theo. Hamm Brewing Co. (Tr. 223–224) and continued as a participant in Hamm's profit-sharing plan and all other fringe benefits at Hamm's.

14. After March 9, 1966, plaintiff never indicated to anyone that he was being treated as a Hamm's employee and not an employee of Heublein, Inc. by reason of duress or against his will.

15. At no time from March 9, 1966 through February 15, 1967 did plaintiff perform services for Heublein, Inc.

16. At no time after March 9, 1966 up to January 15, 1967, did plaintiff ever question that his employer was Theo. Hamm Brewing Co.

On the basis of these facts, the Court concludes that:

1. If plaintiff signed the employment contract with Theo. Hamm Brewing Co. under duress, such duress abated after April 13, 1966 and prior to plaintiff's termination on January 16, 1967.

2. Plaintiff by his course of conduct after April 13, 1966 accepted Theo. Hamm Brewing Co. as his employer of his own free act and will.

3. Plaintiff by his course of conduct after April 13, 1966 accepted the benefits of the employment contract with Theo. Hamm Brewing Co. executed by him on April 13, 1966 and acquiesced in its terms and those of the stock option agreement which he executed with Heublein, Inc. on April 13, 1966.

4. The contracts which plaintiff signed in April, 1966 superceded any agreements reached between plaintiff and Heublein, Inc. in March, 1966 and are binding on plaintiff.

See in support of these conclusions as to the ratification of a contract allegedly made under duress, Gallon v. The Lloyd-Thomas Co., 264 F.2d 821, 77 A.L.R.2d 417 (8th Cir. 1959); Port Chester Elec. Const. Corp. v. Hastings Terrace, 284 App.Div. 966, 134 N.Y.S.2d 656 (1954); Steblay v. Johnson, 194 Minn. 352, 260 N.W. 364 (1935). See also Annot. in 77 A.L.R.2d 426.

See in support of the conclusions as to the substitution of Hamm's for Heublein as the employer, Darvell v. Paul A. Laurence Co., 239 Minn. 55, 57 N.W.2d 831 (1953); Yoselowitz v. Peoples Bakery, Inc., 201 Minn. 600, 277 N.W. 221 (1938); Murphy v. John Hancock Mutual Life Ins. Co., 198 Minn. 459, 270 N.W. 136 (Minn.1936).

■ Defendants also urged the Court to make findings on the statute of frauds contention. Frankness requires me to observe that while unimpressed with defendants' arguments on this issue when orally presented, a reading of the briefs and the cases cited satisfies me that the Heublein contract, as found by the jury to have been made, is unenforcible under both the Minnesota law, M.S.A. 513.01(1) and the New York law, New York General-Obligation Law, McKinney's Consol. Laws, c. 24–A, § 5–701. Accordingly the court finds as follows on this issue:

1. On Sunday, March 6, 1966 plaintiff and Ralph A. Hart met in the New York Hilton Hotel, New York City. (Tr. 56, 252, 304)

2. On March 6, 1966 Ralph A. Hart was Chairman of the Board of Heublein, Inc. and President of Theo. Hamm Brewing Co., a Minnesota corporation and a subsidiary of Heublein, Inc. (Tr. 58, 59, 244)

3. On March 6, 1966 plaintiff knew that Theo. Hamm Brewing Co. was a subsidiary of Heublein, Inc. and not a division. (Tr. 107, 313)

**14**

4. Plaintiff testified that on March 6 and 7, 1966 in oral conversations between Ralph A. Hart and himself they came to the following agreements:

a. The employer would be Heublein, Inc. (Tr. 59)

b. Plaintiff would be employed as Vice-President and Sales Manager of the Theo. Hamm Brewing Co., headquarters in St. Paul, Minnesota. (Tr. 58, 72)

c. The contract would be of two years' duration commencing March 7, 1966. (Tr. 70, 72)

d. Plaintiff would be paid at the rate of $35,000.00 per year plus $25,000.00 if terminated after two years. (Tr. 62, 70, 72)

e. Plaintiff would be entitled at the end of the two years to an absolute right to purchase 7,500 shares of the stock of Heublein, Inc. from Heublein, Inc. at the market price on April 4, 1966. (Tr. 70, 72)

f. Plaintiff would be entitled to a substantial interest-free loan from his employer to help him purchase his new home in St. Paul. (Tr. 76, 162–163)

g. Plaintiff would be entitled to reimbursement of his living expenses at St. Paul before the family moved, the cost of visiting his family in Pittsburgh, and the cost of moving his family. (Tr. 72, 77, 102)

h. Plaintiff would be a participant in the profit-sharing plan of Theo. Hamm Brewing Co., a Minnesota corporation, and in the other Hamm fringe benefit plans. (Tr. 62–63)

5. On March 7, 1966, Ralph A. Hart sent a wire from St. Paul, Minnesota to plaintiff in New York. The wire stated:

"HARRY DIFFENDERFER, INTERNATIONAL HOTEL
KENNEDY AIRPORT JAMAICA NY

"CONFIRM EMPLOYMENT VICE PRESIDENT SALES HAMMS TODAYS DATE SALARY THIRTY FIVE THOUSAND DOLLARS YEARLY MINIMUM STOCK OPTIONS FIVE THOUSAND EXERCISABLE AFTER TWO YEARS AT AVERAGE PRICE APRIL 4. IN EVENT WE DISSATISFIED WITHIN TWO YEARS AGREE TO PAY ADDITIONAL TERMINATION TWENTY FIVE THOUSAND DOLLARS TO BE CONFIRMED BY CONTRACT REGARDS HART. (Pl. Ex. 6)

6. On or about March 7, 1966 plaintiff sent the following wire to Ralph A. Hart at Theo. Hamm Brewing Co., St. Paul:

"JFK INTERNATIONAL AIRPORT NY
R A HART
HAMMS BREWERY ST. PAUL MINN

"CONFIRM RECEIPT YOUR WIRE I WILL ARRIVE SAN FRANCISCO MARCH 8TH MEET YOU AS ARRANGED BREAKFAST WEDNESDAY NINTH. REGARDS HARRY DIFFENDERFER." (Def. Ex. D)

7. The jury found that between March 6 and 8, 1966 the plaintiff and Ralph A. Hart made a contract of employment:

(i) with Heublein, Inc.

(ii) for a definite term of two years

(iii) with an option to plaintiff to buy 5,000 shares of Heublein, Inc. stock, exercisable March 7, 1968.

8. The following understandings testified to by plaintiff did not appear in the telegrams.

a. Identification of Heublein, Inc., as the employer,

b. A two-year term,

c. Surrender of the employer's ordinary right to terminate without cause,

d. Entitlement to 7,500 shares on option as claimed by plaintiff in his complaint and in his testimony,

e. Description of the interest-free loan in a substantial amount,

f. Reimbursement of plaintiff's living expenses in St. Paul, the cost of visiting his family in Pittsburgh, and of moving his family to St. Paul after school was out in June,

g. Fringe benefits at Hamm's including participation in the Theo.

Hamm profit-sharing, health and life insurance plans.

9. On or about March 8, 1966 plaintiff gave up an employment opportunity at Howard Johnson Company and flew to San Francisco to report there for work on March 9, 1966. (Tr. 75)

10. Plaintiff worked as Vice-President and Sales Manager of Theo. Hamm Brewing Co. from then until January 16, 1967 (Tr. 93) and was paid to and including February 15, 1967. (Tr. 100).

Upon these findings the Court concludes that the Heublein contract is unenforcible by reason of the statute of frauds because no note or memorandum thereof was introduced in evidence which identified the parties, indicated an acceptance, was subscribed to by Heublein, or contained all of the essential terms of the claimed contract.

■ In my view there was no substantial evidence to support the jury's verdict as against the defendant Ralph A. Hart, and he is entitled to a judgment notwithstanding the verdict for this reason.

Additionally, the Court is fully satisfied that a new trial should be conditionally granted. The jury, in my view, made a mistake. The evidence was overwhelming that the contract was not between plaintiff and Heublein, but rather between plaintiff and Hamm's.

■ The jury's decision that Heublein did not have a good faith dissatisfaction with the plaintiff's employment is contrary to the clear weight of the evidence. The evidence preponderated that there was ample cause, especially when judged subjectively, for the discharge of the plaintiff. It is difficult to find in the record much evidence from which the inference could be drawn that plaintiff did not execute the Hamm contract on April 13, 1966 of his own free will.

It appeared manifest to me at trial, as it does now, that the plaintiff made a contract with Hamm's, his services were found unsatisfactory, and he was discharged for adequate cause; and the cir-

cumstance of the precipitous rise of the market value of Heublein stock between March, 1966 and the date of trial may well have been a motivating force in plaintiff's present claim that the contract was made with Heublein and not with Hamm's. There is little, if any, evidence in the record to support that claim.

■ It is my responsibility to grant a new trial when, as here, a jury returns a verdict which is contrary to the clear weight of the evidence, and when, as here, it is necessary to prevent a miscarriage of justice. We are vested with the common law power to grant a new trial under such circumstances, a power which is recognized by F.R.Civ.P. 59, 28 U.S.C.A. See Barron & Holtzoff, Fed.Pract. & Proc. § 1302 and Aetna Casualty & Surety Co. v. Yeatts, 122 F.2d 350 (4th Cir. 1941). The Court of Appeals for this Circuit has recognized the principle. Lack Industries, Inc. v. Ralston-Purina Co., 327 F.2d 266, 273 (8th Cir. 1964); Altrichter v. Shell Oil Co., 263 F.2d 377 (8th Cir. 1959).

In summary, therefore,

(1) The Court grants the motion of the defendant Hart for judgment notwithstanding the verdict because there is no substantial evidence to support the verdict as to him;

(2) The Court finds that the plaintiff's ratification and acceptance of Hamm as an employer after April 13, 1966, and his acquiescence in a course of conduct under the Hamm contract constituted a waiver of any duress allegedly practiced against him, as found by the jury, and a termination of any contract with Heublein, as found by the jury, and that the defendants are entitled to judgment n. o. v. for this reason;

(3) The Court finds that the Heublein contract claimed by the plaintiff and found by the jury to have been made is unenforcible by reason of the statute of frauds because no note or memorandum thereof was introduced into evidence which identified the parties, provided for an acceptance, was subscribed to by Heublein or contained all of the essential

terms of the contract, and that the defendants are entitled to judgment n. o. v. for this reason;

(4) The defendants are entitled to a new trial, conditionally, because the verdicts were contrary to the overwhelming weight of the evidence and in the interest of justice.

The foregoing shall constitute the Court's findings of fact and order for judgment.