**Harry S. DIFFENDERFER, Appellant,**

v.

**HEUBLEIN, INC., a corporation, and Ralph A. Hart, Appellees.**

**No. 19392.**

United States Court of Appeals
Eighth Circuit.

July 9, 1969.

R. J. Leonard, of Altman, Geraghty, Leonard & Mulally, St. Paul, Minn., for appellant, and filed brief; James M. Corum on the brief.

Lawrence J. Hayes, of Maun, Hazel, Green, Hayes, Simon & Aretz, St. Paul, Minn., for appellees; Louis W. Brenner, St. Paul, Minn., on the brief.

Before VOGEL, MATTHES and BRIGHT, Circuit Judges.

VOGEL, Circuit Judge.

This is an action to recover damages for an alleged breach of an employment contract, wherein plaintiff-appellant, Harry S. Diffenderfer, appeals from a judgment notwithstanding the verdict for defendants-appellees, Heublein, Inc., and its president and chairman of the board, Ralph A. Hart, and an order conditionally granting a new trial. Federal jurisdiction is based upon diversity of citizenship and requisite statutory amount in controversy. We affirm.

Plaintiff alleged for his cause of action that he entered into an employment contract with Heublein, whereby he would be vice president and general manager of sales for Theo. Hamm Brewing Company, and that defendants breached this contract. Defendants denied that plaintiff had an employment contract with Heublein and alleged that any contract plaintiff had was with Hamm's, Heublein's wholly-owned subsidiary.[1]

The case was tried to a jury, the Honorable Edward J. Devitt, Chief Judge, presiding. Plaintiff's case consisted solely of his own testimony and the cross-examination of defendant Hart, who was president of Hamm's in addition to serving as president and chairman of the board of Heublein.

On March 6, 1966, Hart met plaintiff in New York and offered him a salary of $35,000 with a stock option for 5,000 shares of Heublein stock, exercisable after two years. On March 7, 1966, plaintiff accepted Hart's offer by telephone, contingent upon confirmation by telegram. Hart then sent plaintiff the following telegram, dated March 7, 1966:

"HARRY DIFFENDERFER, INTERNATIONAL HOTEL
KENNEDY AIRPORT JAMAICA NY
"CONFIRM EMPLOYMENT VICE PRESIDENT SALES HAMMS TODAYS DATE SALARY THIRTY FIVE THOUSAND DOLLARS YEARLY MINIMUM STOCK OPTIONS FIVE THOUSAND EXERCISABLE AFTER TWO YEARS AT AVERAGE PRICE APRIL 4. IN EVENT WE DISSATISFIED WITHIN TWO YEARS AGREE TO PAY ADDITIONAL TERMINATION TWENTY FIVE THOUSAND DOLLARS TO BE CONFIRMED BY CONTRACT REGARDS HART."

On March 8, 1966, plaintiff wired Hart as follows:
"JFK INTERNATIONAL AIRPORT NY
R A HART
HAMMS BREWERY ST. PAUL MINN
"CONFIRM RECEIPT YOUR WIRE I WILL ARRIVE SAN FRANCISCO MARCH 8TH MEET YOU AS ARRANGED BREAKFAST WEDNESDAY NINTH. REGARDS HARRY DIFFENDERFER."

Plaintiff testified that later benefits were added to the employment agreement, including an understanding that Hart would attempt to obtain a stock option for an additional 2500 shares of Heublein stock.

Plaintiff commenced employment as vice president of Hamm's on March 9, 1966. He at first reported to Hart, but then reported to Roy M. Westley after Westley's appointment as executive vice president of Hamm's in July 1966.

On March 14, 1966, plaintiff signed the following documents, among others, indicating in each that his employer was Theo. Hamm Brewing Company: (1) Designation of beneficiary in Hamm's profit-sharing plan; (2) application for Hamm's insurance coverage with Life Insurance Company of North America; (3) Hamm's enrollment card for the Minnesota Mutual Life Insurance Company; (4) payroll deduction authority for Hamm's accidental death and injury insurance policy; (5) application for bond coverage; and (6) questionnaire for the United States Treasury Alcohol Tax Unit.

On April 7, 1966, P. R. Dohl, vice president of Heublein, sent plaintiff a qualified stock option agreement for the purchase by plaintiff of 5,000 shares of Heublein common stock on or before April 6, 1971, at $33.1875 per share, and a contract of employment between Theo.

1. At the institution of the suit, defendants moved to dismiss because of failure of the plaintiff to join Hamm's as an indispensable party defendant. Finding that Hamm's was not an "indispensable party" and that joinder of Hamm's would defeat jurisdiction by destroying diversity, the District Court denied the motion and the case was tried with Heublein and Hart as the only defendants.

Hamm Brewing Company and plaintiff, dated March 7, 1966. On April 13, 1966, plaintiff executed both agreements and returned them to Dohl with a letter of acknowledgment. The employment agreement was executed "Theodore Hamm Brewing Company by R. A. Hart, President" and makes no reference whatsoever to Heublein as an employer. The contract provided for employment of plaintiff by Hamm's as its "Vice President—sales (or in such other executive capacity as the Board of Directors of Hamm may from time to time designate) commencing March 7, 1966"; a salary of $35,000 per annum; benefit plans for plaintiff as an executive employee of Hamm's; Hamm's best efforts to obtain and grant to plaintiff an option to purchase 5,000 shares of unissued Heublein common stock; and termination of the contract at Hamm's option any time prior to March 6, 1968, upon 30 days' notice to plaintiff and the payment of $25,000 as severance compensation.

After commencing employment, plaintiff received his salary and expense checks exclusively from Hamm's. In June 1966, plaintiff borrowed $20,415 from Hamm's without interest for the purchase of a home in St. Paul. Also during June, plaintiff applied for membership in a country club, showing Hamm's as his employer and for which Hamm's paid. In June or July, plaintiff accepted reimbursement from Hamm's for the expense of moving his family and household goods from Pittsburgh, Pennsylvania, to St. Paul, Minnesota. Between March 7, 1966, and the time plaintiff's family moved to St. Paul he was reimbursed by Hamm's for all of his personal living expenses.

On January 16, 1967, Hamm's, after what it believed to be most unsatisfactory services from plaintiff, gave notice to plaintiff through Roy M. Westley, its executive vice president, of its desire to terminate the employment agreement as of February 15, 1967, and make a severance payment of $25,000.

On February 23, 1967, plaintiff acknowledged in writing to Hamm's that he had received the $25,000 "lump sum payment under my contract of employment with the Company", making no mention whatsoever of his presently alleged contract with Heublein. After termination of the employment contract, plaintiff applied for unemployment compensation as an employee of Hamm's. At no time between March 9, 1966, and February 15, 1967, did plaintiff ever question or indicate to anyone that his employer was Heublein, not Hamm's.

At the time of trial, plaintiff contended that his employment contract had been with Heublein and that the contract he signed with Hamm's was done under duress, which duress continued throughout his employment and thus was not waived by his performance under the contract.

The case was submitted to the jury on a special verdict form pursuant to Rule 49, Federal Rules of Civil Procedure, 28 U.S.C.A. The jury answered all questions in favor of plaintiff, finding that the contract of employment was between Heublein and plaintiff; that the contract was for a definite term of two years with a stock option of 5,000 shares of Heublein stock; that the earliest the stock option could be exercised was March 7, 1968; that Heublein had no good faith dissatisfaction with plaintiff and it did not have good cause for terminating the employment contract; and that plaintiff did not sign the employment agreement and other instruments of his own free will and without duress. The jury fixed plaintiff's damages at $161,500.

The issue of whether or not plaintiff had waived the duress, as found by the jury, was not submitted to the jury on the special verdict form. Accordingly, the trial court determined that issue under Rule 49, in addition to ruling on defendants' motions for judgment n.o.v. and a new trial conditionally under Rules 50 (c) and 59 (a), Federal Rules of Civil Procedure, 28 U.S.C.A. In a

memorandum opinion published at 285 F.Supp. 9, the trial court:

(1) Granted defendant Hart's motion for judgment n.o.v. "because there is no substantial evidence to support the verdict as to him".

(2) Specifically found that the plaintiff ratified and accepted Hamm's as his employer after April 13, 1966, acquiesced in a course of conduct under the contract with Hamm's which

"constituted a waiver of any duress allegedly practiced against him, as found by the jury, and a termination of any contract with Heublein, as found by the jury, and that the defendants are entitled to judgment n.o. v. for this reason".

(3) Found that the Heublein contract as claimed by the plaintiff and found by the jury was

"unenforceable by reason of the statute of frauds because no note or memorandum thereof was introduced into evidence which identified the parties, provided for an acceptance, was subscribed to by Heublein or contained all of the essential terms of the contract, and that the defendants are entitled to judgment n.o.v. for this reason".

(4) Held that "[t]he defendants are entitled to a new trial, conditionally, because the verdicts were contrary to the overwhelming weight of the evidence and in the interest of justice".

In so holding, the trial court stated:

"I am fully satisfied that the verdict of the jury in this case was a mistake, and that the great preponderance of the evidence supports a contrary verdict. I am especially impressed that the facts at trial clearly support a finding that plaintiff's conduct after the signing of the Hamm contract in April, 1966, constituted a waiver of duress if any there was, a ratification of the Hamm contract, and hence an abandonment of the contract, if any there was, with Heublein.

\*    \*    \*    \*    \*    \*

"It appeared manifest to me at trial, as it does now, that the plaintiff made a contract with Hamm's, his services were found unsatisfactory, and he was discharged for adequate cause; and the circumstance of the precipitous rise of the market value of Heublein stock between March, 1966 and the date of trial may well have been a motivating force in plaintiff's present claim that the contract was made with Heublein and not with Hamm's. There is little, if any, evidence in the record to support that claim." 285 F. Supp. at 11, 15.

On appeal, plaintiff contends (1) that he did not waive the duress which the jury found to have tainted the Hamm's contract and the court erred in so finding, and (2) that the Hart telegram of March 7, 1966, constituted a sufficient writing to take the Heublein contract outside the statute of frauds and the court erred in holding to the contrary.

With regard to the duress issue, plaintiff contends that when he executed the many instruments, particularly the employment agreement with Hamm's on April 13, 1966, he did so under duress or economic compulsion and not of his own free will. He further contends that all contractual relationships should be related back to his alleged contract with Heublein, as partially reflected in Hart's telegram to him of March 7, 1966, and his reply to Hart of March 8, 1966, and as subsequently clarified by oral agreements or understandings. In an attempt to avoid the effect of the written contract entered into with Hamm's on or about April 13, 1966, plaintiff relies on the well-known doctrines that:

"A contract entered into under duress is generally considered not void, but merely voidable, and is capable of being ratified *after the duress is removed* \* \* \*." 77 A.L.R.2d 428.

(Emphasis supplied.)

and

"The effect, as such, of the alleged ratification of a contract induced by duress has been denied where it appears that at the time of the alleged ratification, or up to the time that re-

pudiation is sought or that duress is urged as a defense, *the duress that originally induced the contract has continued to operate. * * *"* 77 A. L.R.2d 446. (Emphasis supplied.)

Plaintiff also cites Steblay v. Johnson, 1935, 194 Minn. 352, 356, 260 N.W. 364, 365–366, to the effect that:

" * * * 'If the party is still acting under the pressure of the original transaction, or the original necessity, or if he is still under the influence of the original transaction, and of the delusive opinion that it is valid and binding upon him, then, and under such circumstances, courts of equity will hold him not barred from relief by any such confirmation.' 1 Story, Eq.Jur. (14 Ed.) § 469; * * *."

We have carefully examined the entire record of more than 400 pages and are in full accord with Judge Devitt's statement that the jury's verdict was a mistake and the great preponderance of the evidence supported a verdict against plaintiff. In this regard, it must be reiterated that plaintiff, and plaintiff alone, testified with regard to the alleged contract with Heublein. Plaintiff's testimony was entirely unsupported or sustained and was fully contradicted by all of his actions beginning March 9, 1966, long before there was any possibility for economic pressure or duress. It should further be noted that Hart's telegram to plaintiff of March 7, 1966, referred only to Hamm's, not Heublein; that this telegram stated that the agreement was "to be confirmed by contract"; that within five days thereafter plaintiff executed a number of instruments, in all of which he designated Hamm's as his employer; that on April 13, 1966, plaintiff signed the contract with Hamm's which he now claims was signed under duress; and that when the April 13th contract was signed, plaintiff's family was still in Pittsburgh, his children were attending school there, and he had not sold his house in Pittsburgh or purchased one in St. Paul. If plaintiff was ever under economic pressure, it was not when he signed the contract with Hamm's on April 13, 1966.

This court was presented with a not dissimilar controversy in Gallon v. Lloyd-Thomas Co., 8 Cir., 1959, 264 F.2d 821, 77 A.L.R.2d 417, where Judge Matthes said:

"Did plaintiff ratify the contract *as a matter of law*? Appellee insists that in view of plaintiff's actions and conduct, and his attitude toward the contract following its execution, the question must be answered in the affirmative. We agree. In resolving this crucial issue, we are mindful of the well-established principle of law that a contract entered into as the result of duress is not void, but merely voidable, and is capable of being ratified after the duress is removed. *Ratification results if the party who executed the contract under duress accepts the benefits flowing from it or remains silent or acquiesces in the contract for any considerable length of time after opportunity is afforded to annul or void it.* 17A Am.Jur., Duress and Undue Influence, § 26; Restatement of the Law of Contracts, Vol. II, §§ 499 and 484; Annotation 35 A.L.R. 866; Oregon Pac. R. Co. v. Forrest, 128 N. Y. 83, 28 N.E. 137; Greenpoint Nat. Bank v. Gilbert, 237 N.Y. 19, 142 N. E. 338; Maisel v. Sigman, 123 Misc. 714, 205 N.Y.S. 807, 814; Application of Minkin, 279 App.Div. 226, 108 N. Y.S.2d 945, 953–954, affirmed 304 N. Y. 617, 107 N.E.2d 94. An essential element in the doctrine of ratification is intention: indeed, it has authoritatively been said that it is '* * * at the foundation of the doctrine of waiver or ratification.' 17A Am.Jur., Duress and Undue Influence § 26 at page 594." (Emphasis supplied.) 264 F.2d, at 825–826.

Measurement of plaintiff's actions subsequent to the alleged Heublein contract by this standard forces us to the conclusion that if there ever was a contract between Heublein and plaintiff and if there ever was duress in the signing of the instruments, including the

Hamm's employment contract, plaintiff has ratified and accepted the written contract with Hamm's as found by Judge Devitt. We think that here, as in *Gallon*, ratification of the contract could be found *as a matter of law*, even though the trial court, pursuant to the special verdict procedures of Rule 49, found ratification *as a matter of fact*. The trial court's finding of fact is supported by substantial evidence and we could not ignore or reverse it if we desired—which we do not.

Because of our holding, no purpose would be served by discussing plaintiff's contentions regarding the statute of frauds.

Affirmed.