Bernard Nadel, J.
Defendants move for summary judgment pursuant to CPLR 3212 upon the ground that no material or disputable issue of fact exists and that there is no merit to the *920 causes of action asserted in the complaint. Plaintiff cross-moves to compel the appearance of defendants for deposition and for other relief.
The action is for breach of contract and fraud based upon alleged unfulfilled oral promises of defendants. For purposes of defendants’ motion, defendants concede the truth of the allegations of the complaint and bill of particulars.
In June, 1970, Champion Marine, Inc. (Champion), a domestic corporation, was the owner of two American flag vessels. Prudential Investment Corporation (Prudential), a Panamanian corporation, owned 23% of Champion’s shares through plaintiff Silvera. Yakarim Trading & Financial Corp. (Yakarim), another Panamanian corporation, was also a minority shareholder of Champion. United States citizens and other domestic corporations (Dotson Group) owned 45% of Champion shares.
Prior to June, 1970, the defendants on their own behalf and that pf Yakarim orally promised the plaintiff, an officer of Prudential, and its agent Mr. Sassoon, that if Prudential would buy out the interest of the Dotson Group in Champion, the defendants would consent to the transfer of the Dotson Group’s shares in Champion to Prudential and refinance Champion.
In July, 1970, Prudential did buy out the interest of the Dotson Group in Champion and became the owner of 68% of Champion’s shares. Thereafter the defendants breached their oral agreement with Prudential. Prqdential has assigned its claims for damages against the defendants to the noncitizen plaintiff, an officer and principal stockholder.
It is uncontroverted that ownership of Champion’s shares was restricted by a 1967 shareholder’s agreement which in ^effect prohibited noncitizens of the United States from owning more than 49% of the outstanding shares of this corporation; limited the acquisition of Champion’s shares owned by United States citizens to other citizens of the United States and gave corporate decision-making control to the owner of 66%% of its outstanding shares.
The oral promises made by defendants are set forth in paragraph twelfth of the complaint: “ Defendants promised to the Plaintiff and Sassoon that in consideration of such agreement between the Prudential and Dotson Groups, Defendants would, notwithstanding the Champion shareholders agreement, consent to the immediate transfer of the Champion shares of the Dotson Group to the Prudential Group. Further, the Defendants agreed that immediately after such transfer, they wpuld add capital or arrange for additional financing for Champion.”
*921 The plaintiff’s bill of particulars does not amplify the complaint as to facts of the refinancing as to a fixed amount, terms or method. Nor do the excerpts from the depositions of plaintiff and Mr. Sassoon, attached to defendants’ moving papers, reveal any specific terms. A synopsis of this testimony discloses that the discussions about refinancing Champion were in general terms; that a figure of $500,000 was mentioned but no definite agreed sum; that there was no monetary limit agreed on as to additional finances by defendants except a “ blank-check ”.
The affidavit in opposition to defendants ’ motion by Mr. Sassoon is devoid of a statement of merits of plaintiff’s cause. It iterates the oral promises of refinancing and waiver of the shares which has been conceded. This affidavit and the affidavit of plaintiff’s attorney are a jeremiad of plaintiff’s attempts to depose defendants and do not address themselves to defendants’ legal defenses that the oral promises are unenforceable.
The promise of the defendants to refinance Champion by adding capital and arranging for additional financing lack the elements for an enforceable agreement since they are vague and indefinite. (See Varney v. Ditmars, 217 N. Y. 223, 228.) The defendants, by plaintiff’s own admissions, retained an unlimited right to decide the nature and extent of their performance which in effect destroys the promise and makes it illusory. (See Chiapparelli v. Baker, Kellog & Co., 252 N. Y. 192, 200.) A bare promise for corporate financing which does' not embody any essential terms as to the manner of effecting it, is too indefinite and uncertain to constitute a contract. (See Royal Bank of Canada v. Williams, 220 App. Div. 603, 607; Garcin v. Granville Iron Corp., 137 Misc. 648.)
Reinforcing their argument for summary judgment the defendants also assert that an integral part of the executory agreement providing for Prudential’s “ take over ” of Champion is unenforceable since it was in violation of a Federal statute and against public policy.
Sections 1 and 2 of the Shipping Act, 1916 (TJ. S. Code, tit. 46, §§ 801-842) define the terms vessels, persons, citizenship, etc., which restrict the transfer of a vessel documented under the laws of the United States. Section 9 of this act (U. S. Code, tit. 46, § 808) in effect decrees that it shall be unlawful to transfer in any manner a vessel or interest therein documented under the laws of the United States, owned in whole or part by a citizen of the United States to a noncitizen without the approval of the United States Maritime Commission and imposes forfeiture *922 and criminal sanctions for its violation. The transfer may not be accomplished by a corporate arrangement whereby the title to the vessel is vested in an American corporation while the control of this corporation passes to citizens of a foreign country. (See United States v. The Meacham) 107 F. Supp. 997, affd. 207 F. 2d 535, app. dsmd. 348 U. S. 801.) The court must as sumé from the plaintiff’s failure to submit any proof of approval by the United States Maritime Commission, that the acquisition by Prudential of Champion was in violation of the Shipping Act, 1916.
It is the public policy of the United States in the interests of national security and commerce to encourage, develop and create an American naval auxiliary and naval reserve and merchant marine to meet the requirements of the commerce of the United States with its territories and possessions arid with foreign countries. (See preamble to the Shipping Act, 1916, 39 U. S. Stat. 728, ch. 451; Merchant Ship Sales Act of 1946, U. C. Code, tit. 50, Appendix, § 1735 et seq.) The ownership and control of Champion’s two American flag vessels by Prudential was in contravention of this public policy.
It is the settled law of New York that a party to an illegal contract cannot ask a court to help him carry out his illegal objective, nor can such a person plead or prove in any court a case in which he, as a basis for his claim, must show his illegal purpose. (See Stone v. Freeman, 298 N. Y. 268, 271.) Where an integral part of an agreement is illegal, the whole agreement is'void and unenforceable at the hands of the one who deliberately violated the statute. (See Sturm v. Truby, 245 App. Div. 357, 361.) A contract which violates the laws of the United States and contravenes the public policy as expressed in those laws is unenforceable. (See Kaiser-Frazer Corp. v. Otis & Co., 195 F. 2d 838, 843, cert. den. 344 U. S. 856.)
Prudential’s executory agreement for the acquisition of Champion’s vessels being illegal and against public policy involving national security and commerce of the American merchant marine is void and unenforceable.
Accordingly, the defendants’ motion for summary judgment dismissing plaintiff’s complaint is granted. Plaintiff’s cross motion is denied as moot.