OPINION OF THE COURT
B. Marc Mogil, J.
He who places his hand into a stranger’s blazing fire to gather in coins belonging to another, scorching his fingers in the unsuccessful attempt, has neither anyone to blame nor any recourse at law. The result is self-inflicted and predictable.
The court was presented at a trial on July 22, 1988, with the rather unique attempt by a player in a so-called "pyramid investment game” to recover a portion of his lost ante ($1,500). James Coyle, of Woodside, Queens, and friends, attended a pyramid-scheme gathering at the North Merrick home of Gene and Doran Richetti on August 20, 1987. The multiple participants in and about the premises were previously strangers and unrelated, other than by their mutual desire to "make *605 a quick killing” and a "fast and easy buck”. All at trial so admitted.
Each player, with cryptic code names or numbers to circumvent possible detection in a scheme all knew to be of at least questionable legality, placed units of $1,500 in cash within separate white envelopes, tendering them to those higher up on "the pyramid”. The higher one climbed, and the more players brought in, the bigger the potential profit to be made. So it went theoretically.
Practically all was apparently going rather well, too, until Newsday reported the arrest by undercover investigators of six other Long Islanders in an identical game. The players in North Merrick panicked in unison upon reading the newspaper that evening, demanding outstanding moneys from the holders. As with any other house of cards, it came solidly crashing down on everyone as quickly as did the banks during the Depression. Everyone seemed to be a loser.
Mr. Coyle, however, now wishes this court to rescue him and put him whole, as if he had not willingly exposed himself to the illegal and substantial risk.
Despite the general provisions of General Obligations Law § 5-419, permitting the recovery of sums lost at various illegal betting ventures, the Legislature has sought to isolate pyramid schemes from losses at games of chance contingent upon the happening (or not) of some specific event. Section 359-fff of the General Business Law makes such pyramid schemes misdemeanors punishable by jail or fine, or both, upon conviction.
The courts in New York have almost never had to deal with such a brazen recovery attempt. The only published decision available to this court is Schaffer v Talerico (118 Misc 2d 66), a 1983 Utica City Court decision which denied such a claim from a disgruntled Amway products pyramid-scheme participant. The court there refused to enforce the pyramid agreement as against public policy.
All participants before this court clearly knew they were pursuing a "quick buck”, something for nothing, and putting their fingers into a blazing fire of risk. As such, this court under the rules of law and equity refuses to be used to enforce a clearly illegal and risky venture, under the same standards of public policy.
Our courts are far too busy assisting innocent and legitimate victims of wrongs to rescue open-eyed, unsuccessful pyramid-scheme participants; we generally will not aid a *606 party to an illegal contract by undoing that which has already been done (see, Silvera v Safra, 79 Misc 2d 919; see also, Stone v Freeman, 298 NY 268).
As such, the court must deny the plaintiff’s claim, with judgment for defendants. The defendants, however, may have prevailed here: however, the end of the tale may not yet be written, since from the evidence adduced, this court is hereby constrained to transmit copies of its decision (as well as opening the transcript and exhibits in the file) to the Nassau County District Attorney, our Police Commissioner, and the New York regional office of the Internal Revenue Service.