OPINION OF THE COURT
Memorandum.
Judgment unanimously reversed without costs, and the complaint is dismissed.
The issue presented on the instant appeal is whether the plaintiff may recover part of his investment of $1,500 paid to *193 defendants as entry fee to join and participate in an illegal pyramid scheme. For the reasons set forth herewith, we hold that the plaintiff has no right of recovery in a civil suit.
The promotional pyramid scheme in question falls within the meaning of "chain distributor scheme” as defined in General Business Law § 359-fff (L 1974, ch 17, § 1, as amended by L 1982, ch 103, § 1). The statute, which forms part of article 23-A of the General Business Law, entitled, "Fraudulent Practices in Respect to Stocks, Bonds and Other Securities”, commonly known as the "Martin Act”, defines a chain distributor scheme as "a sales device whereby a person, upon condition that he make an investment, is granted a license or right to solicit or recruit for profit or economic gain one or more additional persons who are also granted such license or right upon condition of making an investment and may further perpetuate the chain of persons who are granted such license or right upon such condition” (General Business Law § 359-fff [2]), and provides that a chain distributor scheme constitutes a "security” within the meaning of article 23-A (General Business Law § 359-fff [3]). The 1982 amendment provides that "investment” as used in the statute includes "any other means, medium, form or channel for the transferring of funds, whether or not related to the production or distribution of goods and services” (General Business Law § 359-fff [2]). Subdivision (1) of General Business Law § 359-fff further provides that it is "illegal and prohibited for any person * * * to promote, offer or grant participation in a chain distributor scheme”. Violation of the statute is an unclassified misdemeanor (General Business Law § 359-g [2]).
The plaintiff, as a knowing and willing participant in a chain distributor scheme prohibited by law, was in pari delicto with the defendants (see, Cochran v Dellfava, 136 Misc 2d 38), and may not, under the general principles of common law, invoke the power of the court to recover the money he lost (see, Coyle v Richetti, 140 Misc 2d 604; Cochran v Dellfava, supra; see also, Highsmith v Smith, NYLJ, Sept. 18, 1990, at 23, col 3; Christie v Charles, NYLJ, June 25, 1990, at 25, col 6; Thompson v Lawrence, NYLJ, June 14, 1989, at 28, col 3). "It is the settled law of this State (and probably of every other State) that a party to an illegal contract cannot ask a court of law to help him carry out his illegal object * * * For no court should be required to serve as paymaster of the wages of crime, or referee between thieves. Therefore, the law 'will not extend its aid to either of the parties’ or 'listen to their *194 complaints against each other, but will leave them where their own acts here placed them’ (Stone v Freeman, 298 NY 268, 271, citing Schermerhom v Taiman, 14 NY 93, 141.)
The lower court acknowledged that General Business Law § 359-fff did not by its terms provide the plaintiff with a right of recovery, but nonetheless determined, by analogy to General Obligations Law §§ 5-419 and 5-421, which permit parties recovery of money lost at wagering games, that the plaintiff was entitled to reimbursement on public policy grounds. Following the approach of Solon v Meuer (141 Misc 2d 993), the court reasoned that reimbursement served the public policy goal of deterring illegal gambling schemes by removing the profit motive.
The classification of chain promotional schemes under article 23-A of the General Business Law, however, indicates that "the Legislature has sought to isolate pyramid schemes from losses at games of chance contingent upon the happening (or not) of some specific event” (Coyle v Richetti, supra, at 605; see also, Highsmith v Smith, supra). General Business Law § 359-fff contains no language abrogating the common-law rule that a party in pari delicto is without remedy at law or equity. Had the Legislature intended to create a comparable right of action to recover money lost at chain distributor schemes, it would have expressly included it, and its omission is an indication that the Legislature intended its exclusion (McKinney’s Cons Laws of NY, Book 1, Statutes § 74). The court thus acted in excess of its authority by expanding the scope of the statute on public policy grounds, so as to provide the plaintiff with a remedy not expressly contained therein. In so doing, the court improperly substituted its judgment for that of the Legislature, by "read[ing] into [the] statute that which the Legislature might have inserted but did not” (McKinney’s Cons Laws of NY, Book 1, Statutes § 73).
We find the public policy rationale advanced by the court in any event unpersuasive. The statutory classification of chain distributor schemes under article 23-A of the General Business Law is consistent with the particular feature characterizing such schemes, i.e., the undertaking by the participants of personal promotional efforts to recruit new members upon which the continued success of the game ultimately depends, a factor which sets these significantly apart from the typical wagering games and bets falling within the ambit of General Obligations Law §§ 5-419 and 5-421, as well as the lotteries regulated by General Obligations Law § 5-423.
*195 Further, while the court correctly observed that the 1974 Memorandum of the Attorney-General (1974 NY Legis Ann, at 78-79; see, People v Life Science Church, 113 Misc 2d 952, 962) "supports] the conclusion that [the statute] created a protected class of persons who * * * cannot be considered accomplices in such schemes”, this does not in our view compel the conclusion that a participant is entitled to recovery of losses in a civil suit, in the absence of express statutory language conferring such right of action (see, McKinney’s Cons Laws of NY, Book 1, Statutes § 301).
Kassoff, P. J., Joy and Scholnick, JJ., concur.