WALTZER, Judge.
This appeal by the Department of Revenue and Taxation of the State of Louisiana is from a February 22, 1992 judgment of the Twenty-Fifth Judicial District Court, *520 Parish of Plaquemines, the Honorable William A. Roe, Judge, presiding. The judgment reversed, vacated, and set aside an October 18, 1990 judgment of the Board of Tax Appeals.
On December 3, 1979 the Department of Revenue issued a “Notice of Assessment and Notice of Right to Appeal to the Louisiana Board of Tax Appeals” to Bean Contracting Company. Subsequent to audit, the Department found that Bean Contracting Company through its successor in merger C.F. Bean Corp. owed $21,386.53 in corporate income taxes on a $556,635.67 gain resulting from the sale of Barge BDCO-98 and Dredge “C.S.E. Holland” plus $23,311.81 from other Louisiana income less allowable deductions of $45,-284.19 equaling $534,663.29 total net income from sources in Louisiana. Bean Contracting Company’s Final Corporation Income and Franchise Tax Return for short year March 1, 1976 — December 31, 1976 showed net income “None” and taxes owed “None”.[1]
Bean Contracting Co., formerly a wholly owned subsidiary, merged with its parent, C.F. Bean Corp., a Louisiana corporation with offices in Belle Chasse, La. Bean International Corporation, a Cayman Island corporation, is also a wholly owned subsidiary of C.F. Bean Corp. SEDCO International, S.A. is a Panamanian corporation. SEDCO International, S.A. and Bean International Corporation formed an 80% Panamanian-20% Cayman Island foreign joint venture SEDCO-BEAN Constructors (hereinafter “SEDCO-BEAN”). Thus SEDCO-BEAN is a completely foreign, completely alien entity. Section 2 of the Shipping Act of 1916, 46 U.S.C. § 802 See: United States v. The Meacham, 107 F.Supp. 997 (E.D.Va.,1952), 207 F.2d 535 (4th Cir.1953) writ granted 347 U.S. 932, 74 S.Ct. 631, 98 L.Ed. 1083 (1954), dismissed 348 U.S. 801, 75 S.Ct. 17, 99 L.Ed. 633 (1954).
In May, 1976 SEDCO-BEAN was preparing to bid on dredging contracts let by the Republic of Nigeria. If awarded the Nigerian contract, then SEDCO-BEAN wished to purchase the dredge “C.S.E. Holland” from C.F. Bean. Accordingly a series of documents which appear as follows ensued.
On June 25, 1976 SEDCO-BEAN CONSTRUCTORS sent the following letter agreement to C.F. Bean.
SEDCO-BEAN CONSTRUCTORS
A JOINT VENTURE
Reply in care of:
SOUTHEASTERN DRILLING OF NIGERIA, LTD
Post Office Box 7906
Lagos, Nigeria West Africa
Telephone 22139
June 25, 1976
C.F. Bean Corporation
1 Shell Square, Suite 3200
New Orleans, Louisiana 70139
Attention: Mr. J.W. Bean
RE: Dredge “Holland”
Dear Sirs:
Further to our previous discussions and understandings, this letter will confirm the agreement between the parties here *521 to regarding the obligation to overhaul the dredge “HOLLAND” (the “Dredge”), the cost of such overhaul and the proposed purchase of the Dredge by SED-CO-Bean Constructors (“SEDCO-BEAN”) should SEDCO-BEAN be successful with certain outstanding tender^) for dredging work to be performed in the Republic of Nigeria.
In consideration of the mutual covenants herein contained it is hereby agreed that:
1. Overhaul
C.F. Bean Corporation (CFB) shall perform a thorough Overhaul of the Dredge in an orderly, organized fashion on a non-overtime basis (except as reasonably necessary) at Plaquemines, Louisiana. Said Overhaul is expected to be completed on Sept. 18, 1976 and will prepare the Dredge for major dredging work in the Republic of Nigeria, which shall include the capability of being towed offshore in a self-contained manner from Port Harc-ourt to Lagos, Nigeria.
2. Estimated Overhaul Cost
In accordance with CFB’s estimate prepared May 10, 1976, the total cost of the Overhaul is expected to be approximately $330,000.
3. Actual Overhaul Cost
Except as otherwise provided in this Agreement SEDCO-BEAN shall reimburse CFB for the actual cost of the Overhaul and CFB shall invoice SEDCO-BEAN for Overhaul work performed at CFB’s actual cost, which shall be deemed to be actual cost of material furnished by CFB at invoice price and actual cost of labor with only payroll taxes and insurance added. There shall be no overhead or profit factors included in said actual cost amounts.
4. Cost Overrun
Should it become apparent that the actual cost of the Overhaul will exceed said $330,000, CFB shall notify SEDCO-BEAN and CFB shall not spend in excess of said amount without written approval of SEDCO-BEAN.
5. Inventory
The parties shall take an inventory of spare parts and consumables aboard the Dredge both before and after the Overhaul.

6.Purchase of the Dredge by SEDCO-BEAN

During a 90-day period beginning with the completion of the Overhaul, SEDCO-BEAN shall have the option to purchase the Dredge from CFB for initial use of same in the Republic of Nigeria. Such purchase shall be made in cash at the lesser of the two following prices:
(a) $1,200,000; or
(b) allow the said actual cost of the Overhaul to be deducted from its capital and surplus accounts in SEDCO-BEAN and subsequent to such deduction CFB shall have an equity interest in SEDCO-BEAN proportionate to a fraction, the numerator of which is 20% of the total capital and surplus of SEDCO-BEAN less the actual cost of the Overhaul and the denominator of which is the total capital and surplus of SEDCO-BEAN. The protocol of Agreement dated 10 October 1972[2] between CFB and SEDCO International, S.A., as amended, shall be amended to reflect each party’s interest in SED-CO-BEAN pursuant to this provision.
If the foregoing is in accordance with your agreement, please so indicate by signing in the space provided below and returning one executed copy to us.
Yours very truly,
Sedco-Bean Constructors /s/ J.C. Fitch
Accepted and agreed to this
4th day of Aug., 1976.
C.F. BEAN CORPORATION /s/ J.W. Bean
On October 20, 1976 SEDCO International, S.A., the Panamanian corporation and C.F. Bean Corp., the Louisiana corporation, entered into the following agreement.
THIS AGREEMENT made and entered into this 20th day of October, 1976, by and between SEDCO International, S.A., a corporation organized and existing un *522 der the Laws of Panama (hereinafter referred to as SEDCO), C.F. Bean Corporation, a Louisiana corporation, (hereinafter referred to as CFB), and Bean International Corporation, a corporation organized and existing under the Laws of the Cayman Islands, (hereafter referred to as BEAN).
WITNESSETH:
WHEREAS, SEDCO and CFB have heretofore established a Joint Venture known as Sedco-Bean Constructors (hereinafter referred to as Constructors) by Agreement dated October 10, 1972[3], which has been modified by a First Addendum dated November 29, 1974[4], and
WHEREAS, the parties have agreed to make certain amendments and additions to that agreement and have entered into agreements with respect to other and additional matters affecting Constructors,
NOW, THEREFORE, in consideration of the mutual covenants and agreements contained herein, the parties agree as follows:
I.
SEDCO has consented to the assignment by CFB of its interest in Constructors to BEAN effective July 1, 1976, subject to the guarantee by CFB of the performance by BEAN of all of its obligations as a partner in Constructors. The consent of Sedeo and the guarantee of CFB shall be executed in the form set forth and attached hereto as Exhibit “A”.
II.
CFB shall cause its wholly owned subsidiary, Bean Contracting Company, a corporation organized and existing under the laws of the State of Louisiana, to sell to Constructors the Dredge HOLLAND, Fuel Barbe (sic) 98, and spare parts, pipe, and other appurtenances pertaining to the Dredge HOLLAND. The purchase price for the Dredge HOLLAND shall be $1,200,000. The purchase price for the Fuel Barge 98, the spare parts, pipe, and other appurtenances shall be determined by an independent appraisal unless otherwise mutually agreed.
III.
SEDCO shall sell to the Joint Venture the vessels referred to for convenience as the Ritchie Tugs. The sales price shall be determined by the means of an independent survey subject to a maximum of $1,756,000.
IV.
In connection with the aforesaid sales of vessels and other equipment, the parties shall execute agreements in substantially the same form as Exhibits “B”, “C”, “D”, and “E” attached hereto and made a part hereof The purchase price shall be paid upon execution of the documents, and title shall pass to the Joint Venture upon execution of the documents subject only to the approval, if any is needed, of the United States Department of Commerce, Maritime Administration. (Emphasis added).
V.
A Second Addendum to the October 10, 1972, Memorandum Agreement establishing Constructors in the form attached hereto as Exhibit “F”[5] shall be executed by the parties. It is specifically understood that BEAN’s obligation to make capital contribution called for in Paragraph II shall be deferred pending completion of the sale of the Dredge HOLLAND by Bean Contracting Company to Constructors.
VI.
BEAN shall have the right to pledge its interest in Constructors as collateral to its lenders subject to the prior review *523 and approval of the form of any collateral agreement which may be proposed between BEAN and any lender.
IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day, month, and year first written above.
Sedeo International, S.A. /s/ J.C. Fitch
Bean International Corporation /s/ J.W. Bean Pres.
C.F. Bean Corporation /s/ J.W. Bean Pres.
Exhibit B attached to the above document is as follows.
AGREEMENT FOR
SALE OF
VESSEL
UNITED STATES OF AMERICA
STATE OF LOUISIANA
PARISH OF ORLEANS
BE IT KNOWN, that it is hereby agreed by and between:
(1) Bean Contracting Company, a Louisiana corporation, represented herein by its undersigned officer, duly authorized, hereinafter referred to as
“Bean”, and
(2) SEDCO-Bean Constructors, a Joint Venture, consisting of SEDCO International S.A., a Panamanian corporation, and Bean International Corporation, a Cayman Islands corporation, represented herein by their undersigned duly authorized representative, hereinafter referred to as “the Joint Venture,”
as follows:
I.
Bean hereby agrees to sell to the Joint Venture, and the Joint Venture hereby agrees to purchase, from Bean, for cash, the following described property, for the consideration expressed herein:
PRICE
Dredge C.S.E. HOLLAND
Official No. 289429
648 Gross Tons $
II.
The Joint Venture has inspected the aforesaid vessel and has found it to be in a seaworthy condition, fit for the intended use and purpose of the Joint Venture.
III.
The above vessel shall be delivered to the Joint Venture at the Port of , on or about the day of , 1976.
IV.
Bean and the Joint Venture shall execute a valid and sufficient Bill of Sale, in multiple originals, transferring title to the above vessel to the Joint Venture, with warranties of title and freedom from all liens and encumbrances, in appropriate form necessary for registration under the flag of Additionally, Bean shall furnish such other documents and United States Coast Guard forms that may be necessary or required in order to transfer title to this vessel. Bean and the Joint Venture further agree to execute any and all documents that may be required by the United States Department of Commerce, Maritime Administration, in order to secure the approval, if any is needed, of that agency for this transfer.
V.
The consideration for the sale of the aforesaid property shall be paid, in cash, by the Joint Venture to Bean on or before the day of , 1976.
IN WITNESS WHEREOF, the parties have caused this Agreement to be executed in their names by their respective officers and representatives, duly authorized, on this day of 1976.
WITNESSES:
BEAN CONTRACTING COMPANY
BY: _
SEDCO-BEAN CONSTRUCTORS,
A Joint Venture
BY: _
(Emphasis supplied).
*524 Exhibits B, C, D, and E are exactly the same as B except that the property described in paragraph I and the parties differ by Exhibit. As quoted above, Exhibit B transfers “Dredge C.S.E. HOLLAND Official No. 289429 643 Gross Tons” and the parties are Bean Contracting Company and SEDCO-Bean Constructors. Exhibit C transfers “The Ritchie Tugs” and the parties are SEDCO International, S.A. and SEDCO-Bean Constructors. Exhibit D transfers “Miscellaneous equipment, as described on attached Exhibit A” and the parties are Bean Contracting Company and SEDCO-Bean Constructors. Exhibit E transfers “Barge BDCO-98 Official No. 522778 607 Gross Tons” and the parties are Bean Contracting Company and SEDCO-Bean Constructors.
According to Paragraph XI of the petition, shortly after October 20, Bean Contracting Company requested Maritime Administration approval. On October 26, 1976 Bean Contracting Company executed Department of Transportation, U.S. Coast Guard Form CG-1342 entitled “Bill of Sale of Enrolled Vessel” for the “C.S.E. Holland”. That document provides:
THE UNITED STATES OF AMERICA

DEPARTMENT OF TRANSPORTATION

U.S. COAST GUARD

BILL OF SALE OF ENROLLED VESSEL

“To all to whom these Presents shall come, Greeting:

Know Ye, that Bean Contracting Company (72-0766384) 504 Plaquemine Street Plaquemine, Louisiana 70764 Sole (Interest Owned) Incorporated under the laws of the State of Louisiana (hereinafter called the seller) of the Dredge vessel called the C.S.E. Holland of 643 net tons, or thereabouts, for and in consideration of the sum of Ten and no/100 and other good and valuable considerations dollars, lawful money of the United States of America, to seller in hand paid, before the sealing and delivery of these presents, the receipt whereof seller does hereby acknowledge and is therewith fully satisfied, contented, and paid has bargained and sold, and by these presents do bargain and sell the interest in the herein described vessel more fully set forth below unto the said SEDCO-Bean Constructors, a Joint Venture Sole (Interest transferred) (hereinafter called the buyers) its executors, administrators, successors, and assigns, together with an equal interest in the masts, bowsprit, sails, boats, anchors, cables, tackle, furniture, and all other necessaries thereunto appertaining and belonging; the Consolidated Certificate of Enrollment and License of which said vessel is as follows, viz:[6]
To have and to hold the said vessel and appurtenances thereunto belonging unto the said buyer its executors, administrators, successors, and assigns, to the sole and only proper use, benefit, and behoof of the said buyer its executors, administrators, successors, and assigns forever: And the said seller, has promised, covenanted, and agreed, and by these presents does promise, covenant, and agree, for itself and its executors, administrators, successors, and assigns, to and with the said buyer its executors, administrators, successors, and assigns, to warrant and defend the said vessel and all other before-mentioned appurtenances against all and every person whomsoever. Sold as is, where is, and without warranty except as to full warranty of title.
In testimony whereof, The said seller has hereunto set its hand and seal this _day of October, in the year of our Lord one thousand nine hundred and Seventy-six.
Bean Contracting Company
By: /s/ J.W. Bean
J.W. Bean, President
Signed, sealed, and delivered in presence of—
/s/Jim M. Fournet
/s/Robert D. Peterson[7]
*525 State of Louisiana
Parish of Orleans
Be it known, that on this 26th day of October, 1976 personally appeared before me, J.W. Bean, who being duly sworn deposed and said he is President of Bean Contracting Company the corporation which is described in and executed the within Instrument, and that he knows the seal of said corporation and that it is affixed and was so affixed to the within Instrument by order of the Board of Directors of said corporation at whose order he signed his name and acknowledged the within instrument to be its free act and deed.
In testimony whereof, I have hereunto set my hand and seal this 26th day of October, A.D. 1976
/s/Jerry C. Paradis Notary Public, Parish of Orleans State of Louisiana My Commission issued for life.
On that same day, October 26, 1976, Bean Contracting Company executed and almost identical Department of Transportation, U.S. Coast Guard Form CG-1342 entitled “Bill of Sale of Enrolled Vessel” for the “Barge BDCO-98”. That document provides:
THE UNITED STATES OF AMERICA

DEPARTMENT OF TRANSPORTATION

U.S. COAST GUARD

BILL OF SALE OF ENROLLED VESSEL

“To all to whom these Presents shall come, Greeting:

Know Ye, that Bean Contracting Company (72-0766384) 504 Plaquemine Street Plaquemine, Louisiana 70764 Sole (Interest Owned) Incorporated under the laws of the State of Louisiana (hereinafter called the seller) of the Barge vessel called the BDCO-98 of 607 net tons, or thereabouts, for and in consideration of the sum of Ten and no/100 and other good and valuable considerations dollars, lawful money of the United States of America, to seller in hand paid, before the sealing and delivery of these presents, the receipt whereof seller does hereby acknowledge and is therewith fully satisfied, contented, and paid has bargained and sold, and by these presents does bargain and sell the interest in the herein described vessel more fully set forth below unto the said SEDCO-Bean Constructors, a Joint Venture Sole (Interest transferred) (hereinafter called the buyers) its executors, administrators, successors, and assigns, together with an equal interest in the masts, bowsprit, sails, boats, anchors, cables, tackle, furniture, and all other necessaries thereunto appertaining and belonging; the Consolidated Certificate of Enrollment and License of which said vessel is as follows, viz:[8]
To have and to hold the said vessel and appurtenances thereunto belonging unto the said buyer its executors, administrators, successors, and assigns, to the sole and only proper use, benefit, and behoof of the said buyer its executors, administrators, successors, and assigns forever: And the said seller has promised, covenanted, and agreed, and by these presents do promise, covenant, and agree, for itself and its executors, administrators, successors, and assigns, to and with the said buyer its executors, administrators, successors, and assigns, to warrant and defend the said vessel and all other before-mentioned appurtenances against all and every person whomsoever. Sold as is, where is, and without warranty except as to full warranty of title.
In testimony whereof, The said seller has hereunto set its hand and seal this _day of October, in the year of our Lord one thousand nine hundred and Seventy-six.
Bean Contracting Company
By: /s/ J.W. Bean
J.W. Bean, President
Signed, sealed, and delivered in presence of—
/s/Jim M. Fournet
*526 /s/Robert D. Peterson[9]
State of Louisiana
Parish of Orleans
Be it known, that on this 26th day of October, 1976 personally appeared before me, J.W. Bean, who being duly sworn deposed and said he is President of Bean Contracting Company the corporation which is described in and executed the within Instrument, and that he knows the seal of said corporation and that it is affixed and was so affixed to the within Instrument by order of the Board of Directors of said corporation at whose order he signed his name and acknowledged the within instrument to be its free act and deed.
In testimony whereof, I have hereunto set my hand and seal this 26th day of October, A.D. 1976
/s/Jerry C. Paradis Notary Public, Parish of Orleans State of Louisiana My Commission issued for life. (Emphasis supplied).
The following documents also bear the date of October 26, 1976:
SALE OF VESSEL
BY
BEAN CONTRACTING COMPANY
UNITED STATES OF AMERICA
STATE OF TEXAS
COUNTY OF HARRIS
BE IT KNOWN THAT
Bean Contracting Company, a Louisiana corporation, represented herein by its undersigned officer, duly authorized, hereinafter referred to as “Bean,”
hereby declares that it has sold and does by these presents grant, bargain, sell, assign, transfer, set over and deliver, unto
SEDCO-Bean Constructors, a Joint Venture, consisting of SEDCO International S.A., a Panamanian corporation, and Bean International Corporation, a Cayman Islands corporation, represented herein by their undersigned duly authorized representative, hereinafter referred to as “the Joint Venture,”
here present, who accepts, all and singular, the following described movable property:
Dredge C.S.E. HOLLAND
Official No. 289429
643 Gross Tons
TO HAVE AND TO HOLD the above described movable property unto the said PURCHASER, its heirs and assigns, forever.
This sale is made for and in consideration of the price and sum of ONE MILLION TWO HUNDRED THOUSAND AND NO/lOO ($1,200,000.00) DOLLARS, cash, receipt whereof is hereby acknowledged by Bean.
The property sold hereunder shall be delivered to the Joint Venture of the Port of New Orleans, on or about the 26th day of October, 1976. Bean warrants that it has good and merchantable title to said property, and that this sale is made free and clear of all liens, mortgages and encumbrances. No other warranties, express or implied, are given by Bean.
SIGNED this 26th day of October, 1976.
Bean Contracting Company
BY: /s/ J.W. Bean
J.W. Bean, President
Sedco-Bean Constructors,
A Joint Venture
BY: /s/ George E. Burke(SP?)
WITNESSES:
/s/Robert D. Peterson[10]
/s/George E. Frey[11]
SALE OF VESSEL
BY
BEAN CONTRACTING
*527 COMPANY
UNITED STATES OF AMERICA
STATE OF TEXAS
COUNTY OF HARRIS
BE IT KNOWN THAT
Bean Contracting Company, a Louisiana corporation, represented herein by its undersigned officer, duly authorized, hereinafter referred to as “Bean,”
hereby declares that it has sold and does by these presents grant, bargain, sell, assign, transfer, set over and deliver, unto
SEDCO-Bean Constructors, a Joint Venture, consisting of SEDCO International S.A., a Panamanian corporation, and Bean International Corporation, a Cayman Islands corporation, represented herein by their undersigned duly authorized representative, hereinafter referred to as “the Joint Venture,”
here present, who accepts, all and singular, the following described movable property:
Barge BD CO-98
Official No. 522778
607 Gross Tons
TO HAVE AND TO HOLD the above described movable property unto the said PURCHASER, its heirs and assigns, forever.
This sale is made for and in consideration of the price and sum of TWO HUNDRED THOUSAND AND NO/100 ($200,000.00) DOLLARS, cash, receipt whereof is hereby acknowledged by Bean.
The property sold hereunder shall be delivered to the Joint Venture at the Port of New Orleans, on or about the 26th day of October, 1976. Bean warrants that it has good and merchantable title to said property, and that this sale is made free and clear of all liens, mortgages and encumbrances. No other warranties, express or implied, are given by Bean.
SIGNED this 26th day of October, 1976.
Bean Contracting Company
BY: /s/ J.W. Bean
J.W. Bean, President
Sedco-Bean Constructors,
A Joint Venture
BY: /s/ George E. Burke(SP?)
WITNESSES:
/s/Robert D. Peterson[12]
/s/George E. Frey[13]
On October 29, 1976, SEDCO-Bean, the purchaser under the above acts, entered into a contract with Gulf Mississippi Marine Corp. for the transportation of the two vessels from Louisiana to Port Harcourt, Nigeria for $243,000.00. The two vessels were to be placed as cargo upon the Gulf Queen II, leaving Louisiana on or about November 5, 1976.
On November 4, 1976 the United States Department of Commerce, Maritime Administration issued the following documents:
U.S. DEPARTMENT OF COMMERCE
MARITIME ADMINISTRATION
WASHINGTON, D.C. 20230
TRANSFER ORDER NO. MA-14835
Approving the Sale to Aliens and Transfer to Liberian Registry and Flag of the Dredge C.S.E. HOLLAND
WHEREAS, An application has been filed by Bean Contracting Company, New Orleans, Louisiana, for the approval required by Sections 9 and 37 of the Shipping Act, 1916, as amended (46 U.S.C. 808 and 835), of the sale of the dredge C.S.E. HOLLAND, Official No. 289429, to Sedco-Bean Constructors (a Panamanian corporation in a joint venture with Sedeo International, S.A., a Panamanian corporation and Bean International Corporation, a Cayman Islands *528 corporation), and the transfer of said vessel to Liberian registry and flag;
IT IS ORDERED, This 4th day of November, 1976, that the approval required by Sections 9, 37, and 41 of the Shipping Act, 1916, as amended (46 U.S.C. 808, 835 and 839), of the sale of the dredge C.S.E. HOLLAND, Official No. 289429, to aliens, as above set forth, and the transfer of said vessel to Liberian registry and flag, be, and it is hereby granted, upon the condition that there shall be no liens or encumbrances recorded against said vessel in the U.S.C.G. Documentation Office at its last United States home port at the time its transfer to foreign ownership, registry and flag is effected, and provided that this approval shall not be construed as permission for the export of any navigational apparatus or equipment of the kinds or types requiring a validated license from the Bureau of International Commerce, Department of Commerce, or any munitions items of the kinds or types requiring a validated license from the Department of State: and
IT IS ORDERED FURTHER, That this approval shall be null and void unless the sale alien, hereby approved, is effected within 90 days of the date of such approval, with option for renewal for an additional 90 days upon written request.
Assistant Secretary For Maritime Affairs /s/ Virginia J. O’Brien Virginia J. O’Brien Assistant Secretary Maritime Administration
In addition to Transfer Order No. 14835 quoted above, on that same day, November 4, 1976, the Assistant Secretary of the U.S. Maritime Administration issued Transfer Order No. 14836 which contains exactly the same language except that it substitutes “Barge BDCO-98” for the C.S.E. Holland language. Like the prior Transfer Order, the barge transfer order also provides that is valid only for “within 90 days of [November 4, 1976]”.
The Transfer Orders refer to several sections of the Shipping Act.
46 U.S.C.App. § 808 currently provides:
“(b) Every vessel purchased, chartered, or leased from the Secretary of Transportation shall, unless otherwise authorized by the Secretary of Transportation, be operated only under such registry or enrollment and license. Such vessels while employed solely as merchant vessels shall be subject to all laws, regulations, and liabilities governing merchant vessels, whether the United States be interested therein as owner, in whole or in part, or hold any mortgage, lien, or other interest therein.
(c) Except as provided in ... a person may not, without the approval of the Secretary of Transportation—
(1) sell, mortgage, lease, charter, deliver, or in any manner transfer, or agree to sell, mortgage, lease, charter, deliver, or in any manner transfer, to a person not a citizen of the United States, any interest in or control of a documented vessel ... owned by a citizen of the United States or the last documentation of which was under the laws of the United States; or
(2) place a documented vessel, or a vessel the last documentation of which was under the laws of the United States, under foreign registry or operate that vessel under the authority of a foreign country.
(d)(1) Any charter, sale, transfer, or mortgage of a vessel, or interest in or control of that vessel, contrary to this section is void.
(2) A person that knowingly charters, sells, transfers, or mortgages a vessel, or interest in or control of that vessel, contrary to this section shall be fined under Title 18, imprisoned for not more than 5 years, or both.
(3) A documented vessel may be seized by, and forfeited to, the United States Government if—
(A) the vessel is placed under foreign registry or operated under the authority of a foreign country contrary to this section; or
(B) a person knowingly charters, sells, transfers, or mortgages a ves *529 sel, or interest or control in that vessel, contrary to this section.
(4) A person that charters, sells, transfers, or mortgages a vessel, or an interest in or control of a vessel, in violation of this section is liable to the United States Government for a civil penalty of not more than $10,000 for each violation.” (Emphasis supplied).
In 1976, 46 U.S.C.App. § 808 provided in part:
"... it shall be unlawful, mthout the approval of the Secretary of Commerce, to sell, mortgage, lease, charter, deliver, or in any manner transfer, or agree to sell, mortgage, lease, charter, deliver, or in any manner transfer, to any person not a citizen of the United States, or transfer or place under foreign registry or flag, any vessel or any interest therein owned in whole or in part by a citizen of the United States and documented under the laws of the United States, or the last documentation of which was under the laws of the United States.
******
Any such vessel, or any interest therein, chartered, sold, transferred, or mortgaged to a person not a citizen of the United States or placed under a foreign registry or flag, or operated, in violation of any provision of this section shall be forfeited to the United States, and whoever violates any provision of this section shall be guilty of a misdemeanor and subject to a fine of not more than $5,000, or to imprisonment for not more than five years, or both.”
In U.S. v. Niarchos, 125 F.Supp. 214, 217 (D.D.C.1954) the court found that under Section 9 of the Shipping Act (46 U.S.C. § 808, above), approval of the Commission is required before a vessel can be placed under foreign registry or flag. Therefore, approval of the Commission is required before a vessel can be “s(old), mortgage(d), lease(d), charter(ed), deliver (ed), or in any manner transfer(ed), or agree to ... to any person not a citizen of the United States, or transfer or place under foreign registry or flag ...”
46 U.S.C.App. 839[14] currently provides:
“Whenever by section 808 or 835 of this title the approval of the Secretary of Transportation is required to render any act or transaction lawful, such approval may be accorded either absolutely or upon such conditions as the Secretary of Transportation prescribes. Whenever the approval of the Secretary of Transportation is accorded upon any condition a statement of such condition shall be entered upon his records and incorporated in the same document or paper which notifies the applicant of such approval. A violation of such condition so incorporated shall constitute a misdemeanor and shall be punishable by fine and imprisonment in the same manner, and shall subject the vessel, stocks, bonds, or other subject matter of the application conditionally approved to forfeiture in the same manner, as though the act conditionally approved had been done without the approval of the Secretary of Transportation, but the offense shall be deemed to have been committed at the time of the violation of the condition.
Whenever by this chapter the approval of the Secretary of Transportation is required to render any act or transaction lawful, whoever knowingly makes any false statement of a material fact to the Secretary of Transportation, or to any officer, attorney, or agent of the Department of Transportation, for the purpose of securing such approval, shall be guilty of a misdemeanor and subject to a fine of not more than $5,000, or to imprisonment for not more than five years, or both.”
In 1976, 46 U.S.C.App. § 839 provided:
“Whenever by section 808 or 835 of this title the approval of the Secretary of Commerce is required to render any act or transaction lawful, such approval may be accorded either absolutely or upon such conditions as the Secretary prescribes. Whenever the approval of the *530 Secretary is accorded upon any condition a statement of such condition shall be entered upon his records and incorporated in the same document or paper which notifies the applicant of such approval. A violation of such condition so incorporated shall constitute a misdemeanor and shall be punishable by fine and imprisonment in the same manner, and shall subject the vessel, stocks, bonds, or other subject matter of the application conditionally approved to forfeiture in the same manner, as though the act conditionally approved had been done without the approval of the Secretary, but the offense shall be deemed to have been committed at the time of the violation of the condition.
Whenever by this chapter the approval of the Secretary of Commerce is required to render any act or transaction lawful, whoever knowingly makes any false statement of a material fact to the Secretary, or to any officer, attorney, or agent of the Department of Commerce, for the purpose of securing such approval, shall be guilty of a misdemeanor and subject to a fine of not more than $5,000, or to imprisonment for not more than five years, or both.”
As mentioned above, on October 29, 1976, SEDCO-Bean, the purchaser, entered into a contract with Gulf Mississippi Marine Corp. for the transportation of the two vessels from Louisiana to Port Harcourt, Nigeria for $243,000.00. The two vessels were in fact placed as cargo upon the Gulf Queen II. Bean dropped its insurance on the two vessels and SEDCO-Bean insured them. The log of the Gulf Queen II indicates that on November 5, 1976 it fueled at New Orleans, on November 7 it left Southwest Pass and on November 8 it was in international waters.
All parties agree that if the sale occurred after November 8 when the vessels were in international waters then no Louisiana corporate income taxes are due, but if the sale occurred before November 8, when the vessels were in Louisiana waters, then Louisiana corporate income taxes are due.
Contained in the record is a photocopy of the front of a check on the account of SEDCO-Bean Constructors at First City National Bank in Houston, Texas in the amount of $1,200,000, payable to Bean Contracting Company, signed by George E. Frey indicating Voucher Number 12-555, and dated December 10, 1976. Because neither the original cancelled check nor a photocopy of the back of the check was placed into evidence, we have no evidence that this check was ever negotiated. The photocopy of the check is attached to Bean’s Exhibit P-12 which is a letter as follows:
HOUSTON CONTRACTING COMPANY GENERAL CONTRACTORS
PIPELINE & MARINE CONSTRUCTION HOUSTON-NEW ORLEANS
Post Office Drawer 66427 Phone 713/626-4220
2807 Buffalo Speedway Telex: 76-2519
Houston, Texas 77006 Cable: HOUCONTR
December 10, 1976
C.F. Bean Corporation
One Shell Square — Suite 3700
New Orleans, Louisiana 70139
Attn: Mr. Bob Peterson
Dear Bob:
Please find the enclosed the following:
1) Check to Bean Contracting Company for $1,200,000.00.
2) Check to C.F. Bean Corporation for $200,000.00.
3) Executed copy of bill of sale between SEDCO-BEAN and SEDCO Contracting Company
4) Executed copy of bill of sale between SEDCO-BEAN and BEAN International.
5) SEDCO-BEAN financial statement for October, 1976.
*531 Bob, please notify us when you receive the check for $1,200,000.00. Sincerely,
HOUSTON CONTRACTING COMPANY
/s/ Jerry Hernandez
Jerry Hernandez
JHGEF/db
Enel.
CC: G.E. Frey
Attached to the letter is the photocopy of the check described above and the two documents entitled Sale of Vessel of Bean Contracting Company which were reproduced above. Items 2 and 4 are not attached. No document entitled Bill of Sale is attached.
Bean’s entire argument before the Board of Tax Appeals was that the October 26, 1976 notarially acknowledged Coast Guard Bills of Sale are not sales and that the Sale of Vessel documents dated October 26, 1976 were not signed on October 26, but rather in December and were erroneously dated October 26, 1976 by some unknown and unidentified person. Bean produced only two witnesses: attorney Conrad Meyer IV, one of the attorneys involved, and Robert Peterson, the Vice President of C.F. Bean Corp. who witnessed several, but not all, documents. Additionally, Bean produced two affidavits, one from John C. Fitch discussing errors in the letter of December 10, 1976 and one from J.W. Gully discussing insuring the dredge and barge during the Gulf Queen II voyage. Both affiants and the two witnesses have limited personal knowledge of the entire transaction. Bean’s best evidence would have been to produce J.W. Bean at the hearing so that he could testify under oath that he did not sign the Acts of Sale of the Vessels on October 26, 1976 as recited in the acts. Neither J.W. Bean nor an affidavit from him were introduced into evidence.
All parties have agreed that if the sale occurred before November 8, 1976, then Louisiana Income taxes would be due on the sale. The Louisiana Department of Revenue argument is that the sales took place on October 26, 1976, thus taxes are owed. As discussed above, the Board of Tax Appeals, acting as a trial court, heard the case on October 17, 1990. The only direct evidence based on personal knowledge on the issue of the date on which J.W. Bean signed the documents was provided by Robert P. Peterson who testified that he saw J.W. Bean sign the documents, that he cannot recall the date on which Bean signed them, but that it was after October 26,1976 and that he does not know how the documents came to be dated October 26th.
The Board of Tax Appeals found that the sale of the vessels occurred before November 8, 1976, while the vessels were still in Louisiana territorial waters, hence corporate taxes were owed. In the interim, Bean had moved from Orleans to Plaque-mine Parish, hence Bean appealed to the 25th Judicial District Court in Plaquemines Parish. The District Court did not conduct a second hearing, but properly only reviewed the Board transcript.
As noted by the trial court in its written reasons for judgment, “the standard and scope of review by this court is as set forth by Collector of Revenue v. Murphy Oil Corp., 351 So.2d 1234 (La.App. 4 Cir.1977). There, at page 1236, the court stated:
“... the Board acts as a trial court, its findings of fact should be accepted where there is substantial evidence in the record to support them, and should not be set aside unless they are manifestly erroneous in view of the reliable, probative and substantial evidence on the whole record. If the Board has correctly applied the law and adhered to correct procedural standards, its judgment should be affirmed.”
The record indicates that Bean failed to carry its burden of proof in proving that *532 the acts of sale had been backdated. This is especially true in light of the notarial acknowledgment attached to each. Bean failed to call either the signatory and affi-ant, J.W. Bean, or the notary, Jerry C. Paradis. The Board found that there was a meeting of the minds and that the three requirements for a sale had been met long before December 10, 1976, in fact, before November 8. Thus the date written on the acts of sale, whether backdated or not, was of little importance. Of course, only the Board of Tax Appeals was able to observe the demeanor of the witnesses who were called.
The district court reversed the Board of Tax Appeals, finding that all prior documents were merely options and that there was no sale until the approval of the Maritime Administration and payment of the price. The district court thus concluded the sales occurred on December 10, 1976, while the vessels were in international waters, so no corporate taxes were owed.
This court finds that for tax purposes, the sale occurred on October 26, 1976 and is void for failure to obtain prior Maritime Administration approval.
In Silvera v. Safra, 361 N.Y.S.2d 250, 253-254, 79 Misc.2d 919, 921-922 (N.Y.Sup. Ct., 1974), the court found that ownership and control of a domestic corporation’s two American flag vessels by a Panamanian corporation which did not secure approval by the United States Maritime Commission on its acquisition of 68% of the domestic corporation’s stock, was a violation of the Shipping Act and was against the United States Maritime policy and thus void. The court stated:
“The Shipping Act, 1916, 46 U.S.C. Secs. 801, 802, defines the terms vessels, persons, citizenship, etc., which restrict the transfer of a vessel documented under the laws of the United States. Section 808 of this Act in effect decrees that it shall be unlawful to transfer in any manner a vessel or interest therein documented under the laws of the United States, owned in whole or part by a citizen of the United States to a non-citizen without the approval of the United States Maritime Commission and imposes forfeiture and criminal sanctions for its violation. The transfer may not be accomplished by a corporate arrangement whereby the title to the vessel is vested in an American corporation while the control of this corporation passes to citizens of a foreign country. (citation omitted) ... It is the public policy of the United States in the interests of national security and commerce to encourage, develop and create an American naval auxiliary and naval reserve and merchant marine to meet the requirements of the commerce of the United States with its territories and possessions and with foreign countries. (See Preamble to the Shipping Act, 1916, 39 Stat. 728, Chap. 451; Merchant Ship Sales Act of 1946, 50 U.S.C.App. 1735)”
The court further stated:
“A contract which violates the laws of the United States and contravenes the public policy as expressed in those laws in unenforceable. (See Kaiser-Frazer Corp. v. Otis & Co., 195 F.2d 838, 843 [ (2d Cir.) ] cert. denied 344 U.S. 856, 73 S.Ct. 89, 97 L.Ed. 664).
Prudential’s executory agreement for the acquisition of Champion’s vessels being illegal and against public policy involving national security and commerce of the American merchant marine is void and unenforceable.”
Louisiana Civil Code Article 7 provides:
Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.
In the instant case, we find that national security interests take precedence.
Having found that for tax purposes the October 26, 1967 sale is null, we note that R.S. 47:287.93 A.(l) provides:
Items of gross allocable income or loss shall be allocated directly to the states within which such items of income are earned or derived, as follows:
(1) Rents and royalties from immovable or corporeal movable property, and profits or losses from sales and ex *533 changes of capital assets consisting of immovable or corporeal movable property, shall be allocated to the state where such property is located at the time the income is derived.
We further note that R.S. 47:1621 provides that “overpayment means a payment of tax, penalty or interest when none was due ...”
We conclude that because the sale was null and void ab initio for tax purposes, there was no sale on October the 26th, hence there is no profit, thus no allocable gross income attributable thereto and no taxes are due on the sale of the C.S.E. Holland and Dredge BDCO-98. To hold otherwise would result in an overpayment under R.S. 47:1621.
For the reasons discussed, the judgment of the 25th Judicial District Court is affirmed.
AFFIRMED.

. This case was originally heard by the Board of Tax Appeals. On February 25, 1982, the Board found against Bean. Because Bean’s domicile was then in Orleans Parish, Bean appealed to the Civil District Court, Parish of Orleans. The transcript could not be completed because in the interim the tape of the hearing was demagnetized by a fire. On April 1, 1987, the Department of Revenue and Taxation moved to dismiss the appeal for want of prosecution. The district court granted the motion and Bean appealed to the Fourth Circuit. On December 28, 1989 the Fourth Circuit remanded to the Civil District Court with orders to either reconstruct the record, if possible, or order a new hearing before the Board of Tax Appeals. On March 9, 1990, the district court remanded to the Board of Tax Appeals. The Board held a second hearing on October 17, 1990. The Board again found against Bean. In the interim, Bean had moved its domicile to Belle Chasse, thus Bean appealed to the 25th Judicial District Court, Parish of Plaquemines. The Plaque-mines trial court, functioning as appellate review, reviewed the record of the hearing below and reversed the Board, finding no taxes were owed. The Department of Revenue and Taxation appealed the Plaquemines Court judgment.

. Not contained in the record.

. Not contained in the record.

.Not contained in the record.

. See Appendix I. [Editor’s Note: Not designated for publication.]

. Vice-President of C.F. Bean Corp. and an employee of J.W. Bean.

. See Appendix II. [Editor’s Note: Not designated for publication.]

. Vice President of C.F. Bean and an employee of J.W. Bean.

. Vice President of C.F. Bean Corp. and an employee of J.W. Bean.

. Reputedly one of the owners of Sedco-Bean.

. Vice President of C.F. Bean Corp. and an employee of J.W. Bean.

. Reputedly an owner of Sedco-Bean.

. 46 U.S.C.App. § 835 entitled “Restrictions on transfer of shipping facilities during war or national emergency" and which is substantially similar to Section 808 quoted above, has been omitted.